THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellee, *vs.* E. NOYES, Appellant.

*Opinion filed December 21, 1911.*

1. EJECTMENT—*what does not destroy possession by a railroad company up to fence.* Possession by a railroad company up to the fence erected with its consent between the right of way and the adjoining land is not destroyed by the fact that a tenant on the land farmed a part of the right of way by permission of the company, or by the fact that the section men did not mow the grass all the way ·to the fence.

2. SAME—*possession of land is notice of the rights of the possessor.* A non-resident land owner cannot say that he had no notice that a fence was built between his land and a railroad right of way where the resident agent who managed the land for the owner had such notice; but it is not necessary for a railroad company to give notice to a land owner in addition to the building of a fence, as the company's possession is notice of its rights.

3. SAME—*what does not constitute color of title.* A condemnation judgment for a right of way sixty-six feet wide, containing 2.46 acres, across a certain described eighty-acre tract is not color of title, neither is a receipt for the money paid in satisfaction of the judgment, which does not describe the particular property and purport to convey title; but the judgment and receipt show the purchase of the right of way of the width described, and if the purchase is followed by uninterrupted and adverse possession of the right of way for twenty years the company will acquire title.

4. SAME—*fact that the fee cannot be acquired by condemnation does not preclude acquiring title by limitation.* The provision of the constitution that where property is taken by condemnation the fee shall remain in the owner subject to the use for which it was taken, does not prevent a railroad company from acquiring a title to land by adverse and uninterrupted possession for twenty years.

5. APPEALS AND ERRORS—*when objection that plea was not verified comes too late.* A cross-error based upon the fact that a plea in ejectment denying possession or claim of title was not verified cannot be considered where the case was tried on the pleadings as they stood, without any objection being made to the plea.

6. PROPOSITIONS OF LAW—*the Practice act contemplates propositions based upon the evidence.* The propositions of law contemplated by the Practice act are those stating rules of law based upon hypotheses of fact which the evidence tends to prove.

APPEAL from the Circuit Court of Coles county; the Hon. M. W. THOMPSON, Judge, presiding.

JAMES VAUSE, JR., for appellant.

JAMES W. & EDWARD C. CRAIG, (JOHN G. DRENNAN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, the Illinois Central Railroad Company, brought this suit in ejectment against appellant, E. Noyes, in the circuit court of Coles county, to recover the possession of a strip of land eight feet wide, the south line of the strip being twenty-five feet north of and parallel with the center line of the railroad track and the north line

thirty-three feet north of said center line, and extending across the east half of the north-west quarter of section 24, town 12, range 7, in said county, claiming title in fee. The appellant pleaded not guilty as to lots 5, 6, 9 and 10 in Noyes' Fifth addition to the city of Mattoon, a part of said strip which lies east of a street of the city of Mattoon running north and south through the eighty-acre tract, and denying that he was in possession of the remainder or claimed any interest therein. A jury having been waived, there was a trial by the court and a judgment in favor of the appellee.

The plaintiff is the owner of the railroad originally constructed by the Grayville and Mattoon Railroad Company, which filed its petition in the county court of Coles county on May 4, 1877, for the condemnation of the right of way sixty-six feet wide across said east half of the north-west quarter of section 24, containing 2.46 acres. A plat of the land to be taken was filed with the petition, but it was not found when this case was tried. Francis V. Noyes was the owner of the land and lived in Massachusetts, and Thomas P. C. Lane, who lived at Mattoon, was his attorney in fact. A trial by jury resulted in a verdict fixing the compensation for the land taken, and the damages, at $1100. Soon afterward the railroad company went into the hands of a receiver, who took possession of the right of way upon his appointment. The receiver settled the judgment for $660, and paid that amount on March 2, 1878, in full payment and satisfaction thereof. The receipt stated that the receiver was authorized to vary the line of the road as established and condemned, not exceeding sixty-six feet either way. The receiver constructed the road, but the right of way was not fenced at that time. The eighty-acre tract was rented by Francis V. Noyes, through Lane, his agent, to William H. Stover in 1882. Stover used the land north of the right of way for a cow pasture, and needing a fence asked Lane to build one. Lane said

that he did not feel like putting in a fence and that it was up to the railroad company to build one. The Peoria, Decatur and Evansville Railroad Company then owned the road and Stover applied to the agent of that company to build a fence. The agent said the company did not have to build a fence inside of the corporation, but it was agreed that the company should furnish the material and Stover should build the fence. The material was furnished and delivered on the ground by the railroad company and a fence of posts and barbed wire was built, which remained until 1905, although it was in poor condition at that time, and was then torn down by the defendant, E. Noyes, who had a deed of the land north of the north line of the right of way. The disputed question of fact in the case related to the location of that fence. The evidence for the plaintiff was that it was built thirty-three feet from the center line of the railroad, measured with a tape line at right angles from said center line by Stover and the section boss, and there was evidence for the defendant that the fence was only twenty-five feet north of said center line. After the defendant tore down the fence a row of right-of-way posts were set thirty-three feet from the center of the track and defendant pulled them up, after which this suit was begun. Three or four years before the trial the defendant set out a row of trees twenty-five feet from the center line of the railroad track. There was a row of telegraph poles about twenty or twenty-one feet from the center of the track, and there was testimony for the defendant that the fence was two or three feet north of that line, but one witness, at least, was evidently mistaken. He made a plat of the land for the agent, Lane, in 1893, with the expectation of subdividing and selling, and he testified that there was a board fence twenty-five feet from the line, and that it was a solid plank fence and probably one-third or one-quarter of it was still left at that time. For the plaintiff there was testimony that there was a roadway between the telegraph

poles and the fence, and it is certain that the fence was a barbed wire fence. Judging from the record, there was a clear preponderance of the evidence for the plaintiff as to the location of the fence, and it would be strange if a railroad company which had bought and paid for a right of way sixty-six feet wide should locate its fence twenty-five feet from the center line instead of thirty-three feet. The plaintiff returned to the State Board of Equalization its right of way sixty-six feet wide at this place for assessment and paid the taxes on it from the year 1881 to 1910, inclusive. After the fence was built Stover farmed the right of way during the three years of his tenancy by consent of the section boss, but that fact had no influence on the rights of the parties, because the possession of Stover was by permission and in subordination to the right of the railroad company. There was testimony that the section men mowed the grass for only twenty-five feet from the track, but if that were true it would not destroy the possession up to the fence. The finding of the court was not contrary to the evidence.

The condemnation judgment did not constitute color of title in the railroad company, (*Converse* v. *Calumet River Railway Co.* 195 Ill. 204; *Chicago, Burlington and Quincy Railway Co.* v. *Abbott,* 215 id. 416;) and neither did the receipt for the money paid in satisfaction of it, which did not describe particular property or purport to convey title. The plaintiff, therefore, could not recover by virtue of the Statute of Limitations of seven years. The judgment and receipt, however, did show that the railroad company paid for a right of way sixty-six feet wide across the eighty-acre tract, containing 2.46 acres, which was the amount of land included in a right of way of that width. The settlement and payment amounted at least to an agreement on the compensation for the right of way and a payment of it. The title of the plaintiff rested upon the fact of the purchase of the right of way, followed by uninterrupted

and adverse possession of it for twenty years. The argument that such possession was not adverse because there was no evidence that Francis V. Noyes knew of the building of the fence is not sound. His agent at Mattoon, who was applied to by Stover to build the fence and who was in charge of the property, necessarily had actual knowledge of the existence of the fence on the land, and his knowledge would be imputed to his principal. But it was not necessary for the railroad company to give notice to Noyes in addition to the existence of the fence on the land. Possession of land is notice of the rights of the possessor. *Lyman* v. *Russell,* 45 Ill. 281; *Jefferson* v. *Jefferson,* 96 id. 551; *Ronan* v. *Bluhm,* 173 id. 277.

The defendant asked the court to hold as law the following proposition:

"The court holds that to constitute an adverse possession sufficient to defeat the party who has the legal title, the possession must be hostile in its inception and so continue without interruption for the period of twenty (20) years. It must be an actual, visible, open, notorious, hostile and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner."

The court marked the proposition "refused." The proposition was abstract in form, and although it was held in *Vigus* v. *O'Bannon,* 118 Ill. 334, that such a proposition, if correct, should be held where the trial is by the court, it was undoubtedly intended by the Practice act that such propositions should state rules of law based upon hypotheses of fact which the evidence tends to prove. In this case the court must have regarded the proposition as not applicable to the facts, since it cannot be supposed that the court did not recognize the statement as correct when properly applied. Francis V. Noyes, who owned the land, had sold the right of way to the railroad company and received pay for it and the defendant had acquired title by his deed to the land north of the right of way, so that, perhaps, the

court did not regard the defendant as the true owner or holder of the legal title to the land in dispute. The proposition may not have been regarded as strictly applicable with respect to taking possession in a hostile manner under the facts of the case with respect to the building of the fence, but the court could not have found for the plaintiff without finding the fact that the fence was thirty-three feet north of the center line of the track, which was the disputed question of fact. If that was so, there was no evidence tending in the slightest degree to prove that possession was taken in subordination to the title of Francis V. Noyes or in recognition of any title in him or by his permission. The possession was taken under a claim of right, if taken at all, and the refusal of the court to hold the proposition could not possibly have affected the judgment.

It is urged that the judgment was wrong in adjudging title in the plaintiff in fee simple, because the constitution provides that where property is taken by condemnation proceedings the fee shall remain in the owner, subject to the use for which it is taken. The defendant contended at the trial, and procured the court to hold a proposition, that the condemnation proceeding was not color of title, and now contends that the plaintiff could only recover by virtue of the twenty-year Statute of Limitations. The provision of the constitution, therefore, does not apply, and it is not contended that the plaintiff was incapable of acquiring title in fee by adverse possession under the Statute of Limitations. As title was not acquired by condemnation proceedings the judgment was not incorrect.

A cross-error is assigned on the failure of the court to adjudge title in fee in the plaintiff to all the land described in the declaration. The ground of that assignment is, that the plea denying possession or claim of title was not verified by affidavit. Perhaps the absence of a verification has been noticed since the trial, but whether that is so or not, no objection of that kind was made. The case was tried

under the pleadings as they stood, and as no question was raised as to the sufficiency of the plea it is too late to make the objection now.

The judgment is affirmed.        *Judgment affirmed.*