WILLIAMS *v.* PATTERSON *et al.*

(In Banc.   March 26, 1945.)

[21 So. (2d) 477.   No. 35797.]

John Horan, of Water Valley, for appellant.

**Creekmore & Creekmore,** of Jackson, for appellant.

**Ernest Kellner,** of Greenville, for appellees.

Argued orally by **H. H. Creekmore**, for appellant.

**L. A. Smith, J.,** delivered the opinion of the court.

This is a suit to confirm title in complainant below, appellant here, to an alleged abandoned right of way formerly used by the Y. & M. V. R. Co. in Washington County, and for damages against one of the several defendants, Patterson, who is specifically sued for taking appellant's alleged personal property of ties, rails and gravel from the lands in controversy, and for a permanent injunction to restrain defendants from trespasses of certain sorts enumerated in the prayer of the original bill.

The original bill was filed by appellant on February 17, 1943, in the chancery court of Washington County, to which a demurrer was interposed by appellee and sustained, with leave to appellant to amend his bill, which he did. The amended bill undertook to deraign the title of the appellant from the government down to and including his own title, which deraignment is exceedingly lengthy and involved and voluminous, taking up approximately twelve pages of the bill. The immediate links in the deraignment particularly involved in this action are several, starting with deeds from Patty Campbell and others dated in 1885, conveying a right of way to the

Memphis & New Orleans R. R. & Levee Company, a Mississippi corporation, which in June of the same year conveyed it by deed of trust to Edward H. Pardee and Albert Trolius, trustees, to secure certain indebtedness. In 1887 this trust deed was foreclosed, and the property conveyed at said foreclosure to Chas. M. Calhoun, who, on the same day, conveyed it to the Louisville, New Orleans & Texas R. Co., which in 1892, by duly recorded Articles of Consolidation, was consolidated with the Y. & M. V. R. Co. It is alleged that thereby all the property rights, privileges and franchises of the two companies involved in the Articles of Consolidation passed to, and became vested in, the consolidated company, to-wit, the Y. & M. V. R. Co., a Mississippi corporation. The Y. & M. V. R. Co., by quit-claim deed on April 2, 1942, conveyed to appellant all its rights, title, interest and claim in and to the property, which is a strip of land 100 feet wide, lying in Washington County. In June of the same year the Y. & M. V. R. Co. conveyed to appellant by quit-claim deed all of its rights, title, interest and claim to an additional strip of land 100 feet wide in Washington County. Over these strips of land the Y. & M. V. R. Co. had operated a line of railway prior to its conveyances to appellant.

On October 24, 1892, the Y. & M. V. R. Co., it is charged, "went into possession, and took absolute possession over said lands herein made the subject matter of this suit, exercised absolute control, possession and ownership over the land, using the same as its own lands, and held them adversely against all the world, and continued so to do for nearly fifty years, until April 2, 1942, for the first tract, and until June 18, 1942, for the second tract, and established absolute ownership thereof by adverse possession and occupation, and then conveyed all its title therein to this complainant (appellant here), who holds by himself, and through his predecessors adversely against the entire world for fifty years, and now has a fee simple title hereto."

A typical deed of the grantors of the right of way to the Memphis & New Orleans R. & Levee Co., all of said deeds being in the same language, in the habendum clause, is as follows: "To have and to hold by the said party of the second part and assigns forever for the purposes hereinafter specified and for none other. That is to say for the purpose of building, constructing and operating a line of railroad on the right of way, and the said party of the second part shall have the right to dig earth, quarry rock, cut timber, and do such other things on the said right of way as are necessary and convenient in constructing and operating its line of railroad thereon." Under these conveyances we think the grantee went into possession of a right of way for railroad purposes only.

The charter of the Memphis & New Orleans R. & Levee Co., original purchaser of the right of way as to the land in controversy, was granted by the Legislature of the State of Mississippi by Chapter 544, Laws 1882, Section 7 thereof being the pertinent part of the charter involved herein, which reads as follows:

"Sec. 7. Be it further enacted, That the right of way is hereby granted said company to pass in and through the State of Mississippi with said railroad and branches and levee, aforesaid, and to enter upon and use all lands, rocks, timber, earth, sand, gravel, water, or other material which may be found on the routes selected and which may belong to the State of Mississippi and be convenient or necessary for the use of said railroad or levee; and whenever the said railroad or its branches are located over any lands belonging to this State, the title in fee simple to one hundred feet on each side of the center of said railroad track or tracks, shall vest in said company, its successors and assigns; and said company is hereby authorized to cause such examinations and surveys to be made as shall be deemed necessary to determine the most eligible route or routes upon which to locate its line or lines and branches and levee, and to enter upon and appropriate all such lands and materials as may be private

property, which may be convenient or necessary for said levee and road, together with one hundred feet on each side of the center of such road and branches; provided, that the right of way along the route of said levee shall be one hundred feet wide on the east or land side of the center line of said levee and six hundred feet wide on the west or river side of such line, in order to allow a growth of trees as a breakwater, for the protection of said levee against the waves of the Mississippi river; and in case the company fails to agree with the owners of such lands or materials upon the price to be paid for fee simple title thereto, or in case the owner is under any disability in law to contract, or is absent from the county where such lands or materials are situated, or is unknown, the company may proceed to condemn such lands or materials as provided in section 8 of an act approved March 10th, 1852, entitled, 'an act to incorporate the Mississippi Central Railroad Company,' with all the rights and powers therein provided, and upon such condemnation being had, the title in fee simple to such lands or material shall vest in said company, its successors and assigns.''

Appellees demurred to this amended bill also, on the ground that it showed on its face that the appellant, ''is not the owner of the land therein described, and to which complainant (appellant) seeks to confirm title in him.'' This demurrer was sustained by the trial court, and appellant then declining to plead further, the amended bill was dismissed, and from this action of the trial court this appeal was taken.

It is contended by appellants that the charter of the Memphis & New Orleans Railroad & Levee Company required it to acquire a fee-simple title to its right of way, by its terms, and that this requirement was mandatory, so that the conveyances of the rights of way must be construed to convey fee-simple title to the land for the right of way, regardless of the language of the deeds. The case of Whelan et al. v. Johnston, 192 Miss. 673, 6 So (2d) 300, is cited in support of this position, but in that

case the fee-simple title to the right of way was acquired by condemnation proceedings. In the case at Bar the Memphis & New Orleans R. & Levee Company acquired its title by deeds, which it accepted. If it had acquired title by condemnation proceedings a different situation probably would have been presented. We think the Whelan case is not in point.

Neither do we think that the case of Cincinnati R., etc., Co. v. Cleveland, etc., R. Co., 188 Ind. 230, 123 N. E. 1, is in point. The issue in that case involved the determination of the width of the right of way, it not having been fixed in the deed of conveyance, and the effect thereon of a later dedication of part thereof by the former owner as public streets on a plat then designated. The act granting the charter provided that when the railroad obtained right of way as therein authorized the title would be in fee simple, but the circumstances of this case make it inapplicable here.

In our judgment, the meaning of the charter of the Memphis & New Orleans R. & Levee Company, involved here, is that the railroad company could acquire a fee-simple title to its right of way, if it so desired, by condemnation if an agreement for such title could not be obtained from landowners. Evidently here it did not, as it accepted deeds to an easement only. It was not mandatory that it take from the landowners deeds in fee simple to the right of way. The most that can be said along that line is that it was permitted to do so, and upon inability to do so after efforts to that end failed, then required to obtain fee-simple title by condemnation. As stated, there was no condemnation had. Dantzler v. Mississippi State Highway Commission, 190 Miss. 137, 199 So. 367.

Therefore, in our opinion, the Memphis & New Orleans R. R. Co. acquired title to an easement, which by mesne conveyances, was what the Y. & M. V. R. Co. had when it conveyed to appellant all its "rights, title, interest and claim." In other words, appellant obtained in 1942 an

easement for railroad purposes, and in his original bill appellant charges that the land involved is an "abandoned right of way."

It is further argued that appellant by himself and through his predecessors in title acquired title to this land by adverse possession of more than fifty years, and cites an Illinois case, Illinois Central R. Co. v. Noyes, 252 Ill. 178, 96 N. E. 830, where the Illinois Court held that if a railroad company condemned land for a right of way and paid therefor, it could obtain a fee-simple title thereto by adverse possession for the statutory period. However, the general rule is thus announced in 2 C. J. S., Adverse Possession, Sec. 89, p. 646. "Claim or use of an easement is consistent with, rather than hostile to, the title of another to the fee, and possession attributable to the easement will not be regarded as adverse to the fee title of another unless and until there is notice of a hostile claim to the fee."

Appellants argue that when the holdings of the Memphis & New Orleans R. & Levee Company were sold under foreclosure to Calhoun, an individual, an adverse claim inconsistent with an easement was set up. There cannot be force to this argument, for the reason that on the same day of his purchase he conveyed what he acquired, an easement, to another railroad company, the Louisville, New Orleans & Texas R. Company, consolidated with the Y. & M. V. R. Co. in 1892, so that Calhoun was a mere conduit from one railroad company to another, and adverse possession in this case could not stem from such intervention in the chain of title without more. No adverse user can arise from a use permissive in its inception (as is the case at bar), until a distinct and positive assertion of a right hostile to the owner has been brought home to him. Schulenbarger v. Johnston et ux., 64 Wash. 202, 116 P. 843, 55 L. R. A. (N. S.) 941. The Kentucky court lays down the rule that one having an easement over the land of another cannot change the character of his right to an adverse holding of the land itself, unless he either gives the true owner actual notice or his acts and

declarations of a hostile claim are so open and notorious as to leave no doubt in the mind of the true owner. O'Banion v. Cunningham, 168 Ky. 322, 182 S. W. 185, Ann. Cas. 1917A, 1017.

This court in Columbus & G. R. Co. v. Dunn, 184 Miss. 706, 185 So. 583, held that a party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts in pais, and without deed or other writing; and a cessation of the use, coupled with any act indicative of an intention to abandon the right, would have the same effect of an express release of the easement, without any reference whatever to time, citing 9 R. C. L. 813, Sec. 69; Scott v. Moore, 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749, and Vogler v. Geiss, 51 Md. 407, 408.

There is nothing revealed in this record of an abandonment of the easement until the Y. & M. V. R. Co. sold its rights to appellant in 1942, far less than ten years ago. So that in our judgment the chancery court was correct in sustaining the demurrers to the original and amended bills, and the case must be affirmed.

Affirmed.