406 So.2d 329 (1981)
HATTIESBURG REALTY COMPANY
v.
MISSISSIPPI STATE HIGHWAY COMMISSION, Pine Belt Land Company and Mrs. Terry Anderson Currie, et al.
No. 52917.
Supreme Court of Mississippi.
November 4, 1981.
As modified December 9, 1981.
*330 Wallace R. Gunn, Hattiesburg, Gerald, Brand, Watters, Cox & Hemleben, Martha Gerald, Jackson, for Hattiesburg Realty.
J.B. Van Slyke, Jr., George G. Currie, Jr., Gray, Montague & Pittman, Frank D. Montague, Jr., Hattiesburg, for Currie, et al. and Cloverleaf Mall.
Milton Schlesinger, Hattiesburg, for Pine Belt Land Co.
Pope & Pope, Moran M. Pope, Jr., Hattiesburg, Bill Allain, Atty. Gen., by Frank E. Shanahan, Jr., Asst. Atty. Gen., Jackson, for Highway Commission.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
ROBERTSON, Presiding Justice, for the Court:
Hattiesburg Realty Company appeals from a decree of the Chancery Court of Forrest County, dismissing its original and first and second amended bills of complaint against Mississippi State Highway Commission, Pine Belt Land Company, Mrs. Terry Anderson Currie, Edward Alexander Currie, Jr., Overton A. Currie, Daniel McMahon Currie, and Cloverleaf Mall, Ltd., to confirm title to Lots 9, 10, 11 and 12, Block 6, West End Addition to the City of Hattiesburg, Mississippi.
Defendant Pine Belt Land Company and Defendants the Curries, et al, cross-appeal from a dismissal of their respective cross-bills in which they each prayed for confirmation of title to the said lots.
The final decree confirmed fee simple title to said lots in the Mississippi State Highway Commission and canceled of record "any and all purported conveyances from and after October 5, 1940, thereby causing each and every such instrument to be set aside and held for naught as same relates to the title of Mississippi State Highway Commission from and after said date of October 5, 1940."
In 1940 the State Highway Commission determined that it was in the public interest to improve U.S. Highways 49 and 11, south of Hattiesburg, for the traveling public. This would be accomplished by 4-laneing U.S. Highways 49 and 11 and constructing a cloverleaf interchange at the intersection *331 of U.S. Highways 49 and 11. Among the right-of-way easements acquired was one from the heirs of Emma Tuttle. The warranty deed from the heirs of Mrs. Tuttle was executed on October 5, 1940, and granted unto the State Highway Commission "for right-of-way purposes":
Lots 9, 10, 11 and 12 in Block 6, in the D.M. Gatlins West End Addition to Hattiesburg, Mississippi.
World War II intervened, and finally in 1947 the improvement of U.S. Highways 49 and 11 and the construction of the cloverleaf interchange were completed. A large shopping center and many business establishments were constructed and developed around this cloverleaf interchange. Later a service road was constructed paralleling the ramp approach in the northeast quadrant of the interchange. While no part of the 4 Tuttle lots was used in the roadbed for the northeast ramp or service road, these lots have been continuously used since 1947 by the Highway Commission as a buffer zone between the service road and the shopping center. A paved four-lane entrance and exit road was constructed through the middle of this property connecting the northeast quadrant service road with the Cloverleaf Mall parking area. Two large concrete drainage culverts were constructed on the Tuttle lots. The Commission, since 1947, has continuously used these lots for drainage purposes and has regularly mowed, cleaned up, pruned trees and otherwise maintained and preserved the scenic beauty of these lots. They continue to be used as a buffer zone for the safety of the traveling public.
The numerous assignments of error can, in our opinion, be safely reduced to these eight:
I. The chancellor erred in holding the deed from the heirs of Emma Tuttle was and is a valid deed without any reverter clause or other such restriction.
II. The chancellor erred in holding the commission, after obtaining statutory rights to acquire fee simple title, acquired fee simple title to the property by adverse possession under color of title.
III. The chancellor erred in finding the commission had used the property uninterruptedly and continuously for a period of time in excess of 35 years and such use had been within that contemplated by the laws of the State of Mississippi and that the term "highway" in its legal sense includes not only the roadway itself but the entire right-of-way as well.
IV. The chancellor erred in not adjudicating the rights of the parties with regard to Huston Avenue, Washington Street, and the alley in Block 6 of West End Addition, and the oil, gas and minerals.
V. The chancellor erred in holding the commission was immune from suits for willful trespass under the doctrine of sovereign immunity.
VI. The chancellor erred in finding that Hattiesburg Realty's and Pine Belt's claims were barred by the statute of limitations.
VII. The chancellor erred in finding that the proof was insufficient to establish adverse possession for the statutory period by the Curries prior to the October 5, 1940, Tuttle deed to the commission, and that the proof was also insufficient to establish the Curries' title to the property by adverse possession since October 5, 1940.
VIII. The chancellor erred in ruling that the city and county tax sales of the property on September 15, 1941, for 1940 advalorem taxes were void and that any liens for taxes on the property for the year 1940 were extinguished when the commission purchased the property for right-of-way purposes on October 5, 1940.

*332 I.
Appellant contends that the chancellor erred in holding that the October 5, 1940, deed from the heirs of Emma Tuttle was and is a valid deed without any reverter clause or other such restriction. The warranty deed from the heirs of Mrs. Tuttle was executed on October 5, 1940, and granted unto the State Highway Commission "for right-of-way purposes":
Lots 9, 10, 11 and 12 in Block 6, in the D.M. Gatlins West End Addition to Hattiesburg, Mississippi.
Mississippi Code of 1930 Annotated, section 4998, which was in effect when the Tuttle deed was executed on October 5, 1940, provided in part:
"That the state highway commission shall have complete control and supervision, with full power and authority to locate, relocate, widen, alter, change, straighten, construct, or reconstruct any and all roads on the state highway system as herein defined, and shall have full and complete authority for the making of all contracts, surveys, plans, specifications, and estimates for the location, laying out, widening, straightening, altering, changing, constructing, reconstructing and maintaing and securing rights-of-way therefor of any and all such highways, and to authorize the employees of the state highway department to enter upon private property for such purposes." (Emphasis added).
This section was construed by this Court as giving the commission authority to acquire only a right-of-way or easement in property for highway purposes. Nicholson v. Board of Mississippi Levee Com'rs, et al., 203 Miss. 71, 33 So.2d 604 (1948) and Whitworth v. Mississippi State Highway Commission, 203 Miss. 94, 33 So.2d 612 (1948).
The Tuttle deed itself conveys these four lots to the State Highway Commission "for right-of-way purposes" only.
In Dantzler v. Mississippi State Highway Commission, 190 Miss. 137, 199 So. 367 (1941), this Court stated:
"It is a grave error to suppose that a condemnor of a right of way for a public road takes any such an interest as the entire fee in the land. In Campbell v. Covington County, 161 Miss. 374, 378, 137 So. 111, 112, this court said: `And, whether the right of way is acquired by condemnation or prescription, the title to the soil, and all the profits thereof consistent with the existence of the easement, remain in the original owner." 190 Miss. at 148, 199 So. at 370.
If and when the Commission decides to abandon its right-of-way easement over all or any portion of the Tuttle lots, or declares all or any portion of the Tuttle lots surplus under applicable law, the disposition of the whole or such portion would be governed and controlled by applicable Mississippi law. We have noted MCA §§ 65-1-59 and 65-1-75 (Supp. 1981) and MCA 65-1-123 (1972), but express no opinion as to the applicability or non-applicability of these statutes to any possible future factual situation that might develop.

II.
Appellant's next contention is that the chancellor erred in holding that, after legislation was passed granting the Commission the right to acquire fee simple title to lands needed by it, the Commission acquired fee simple title to the four Tuttle lots by adverse possession under color of title.
Mississippi General Laws, Chapter 332, section 8 (1948), granted statutory authority to the Commission to acquire fee simple title to lands needed by it. This law in and of itself did not, ipso facto, vest fee simple title in the Commission to lands in which the Commission had only acquired easement rights for right-of-way purposes. If, after the passage of this legislation, the Commission should determine that fee simple title is now necessary in order for it to carry out its duties and responsibilities, then it would be necessary for the Commission to acquire fee simple title either by further purchase, gift, or condemnation proceedings against the property owner.
In Williams v. Patterson, et al, 198 Miss. 120, 21 So.2d 477 (1945), this Court said:

*333 "It is further argued that appellant by himself and through his predecessors in title acquired title to this land by adverse possession of more than fifty years, and cites an Illinois case, Illinois Central R. Co. v. Noyes, 252 Ill. 178, 96 N.E. 830, where the Illinois Court held that if a railroad company condemned land for a right of way and paid therefor, it could obtain a fee-simple title thereto by adverse possession for the statutory period. However, the general rule is thus announced in 2 C.J.S. Adverse Possession § 89, p. 646. `Claim or use of an easement is consistent with, rather than hostile to, the title of another to the fee, and possession attributable to the easement will not be regarded as adverse to the fee title of another unless and until there is notice of a hostile claim to the fee.'" 198 Miss. at 130, 21 So.2d at 480.

See also St. Regis Pulp & Paper Corp. v. Floyd, 238 So.2d 740 (Miss. 1970).
The proof at trial was that the Commission had maintained the Tuttle lots as a portion of its right-of-way for drainage, traffic safety, beautification, and future needs. No part of these lots has ever been used for any purpose inconsistent with their use for right-of-way purposes only. No hostile flag has ever been run up; no hostile claim has ever been made. In the absence of any notice of a hostile claim, adverse possession cannot be asserted against the owner of the fee.
The chancellor erred in holding that the Commission had acquired fee simple title to the Tuttle lots by adverse possession under color of title.

III.
Appellant contends that the chancellor erred in finding that the Commission had used the property continuously and uninterruptedly for over 35 years for highway purposes, and that the term "highway" includes not only the roadway itself but the entire right-of-way as well.
The term "highway" or "road" was defined in Mississippi Code of 1930 Annotated, section 5021, in this way:
"When used in this chapter, unless the context indicates otherwise, the term `highway' or `road' includes rights of way, bridge and drainage structures, signs, guard rails and other structures made in connection with such highway or road; ..."
This definition has been brought forward unchanged and is presently found in MCA § 65-1-1 (1972).
In Reed v. Mississippi State Highway Commission, 260 So.2d 184 (Miss. 1972), this Court said:
"The determination of the amount of right-of-way necessary for any given highway is within the discretion of the State Highway Commission under policies that it may adopt from time to time, unless the Legislature limits this power.
"The general rule is stated in 26 Am.Jur.2d Eminent Domain Section 114 (1966) which is as follows:
`In the absence of a statute controlling the amount of land that may be taken for a public purpose, the grantee of the power of eminent domain may exercise a large discretion in such respect. This discretion as to the amount is not reviewable by the courts, unless, possibly, where there has been a gross abuse or manifest fraud. (26 Am.Jur.2d Eminent Domain at p. 772).'
"A further statement of the general rule is found in 29A C.J.S. Eminent Domain § 92 (1965) as follows:
`Prospective needs. The amount of land which may be taken by a grantee of the power of eminent domain need not be restricted to the needs of the immediate future. The grantee may condemn lands sufficient to provide for not only its present but also its prospective necessities, if it is not more than may in good faith be presumed necessary for future use within a reasonable time. The determination of the grantee will not be interfered with by the courts except in a clear case of abuse of discretion. ... (29A C.J.S. Eminent Domain at pp. 386, 387).'" (Emphasis added).

*334 260 So.2d at 186-87.
See also Pearl River Valley Water Supply District v. Brown, 248 Miss. 4, 156 So.2d 572 (1963).
In the recent case of Robert E. Ratliff Company Inc. v. Mississippi State Highway Commission, 400 So.2d 1211 (Miss. 1981), this Court said:
"It would be novel indeed to require courts to oversee an administrative body charged with maintaining public highways and streets and chop off outer portions of a right-of-way simply because of some claim the right-of-way was not being used to its full width. We adhere to the rule set forth in 39A C.J.S. Highways, § 131(b), p. 851:
`If a highway is legally laid out and established, the mere fact that the public does not use it to its entire width will not of itself constitute an abandonment of any portion thereof. The rule is the same whether or not the road is fenced by the adjoining landowners. Encroachments on a highway continually used cannot be legalized by mere lapse of time; the limited use will not lessen the right of the public to use the entire width of the road whenever the increased travel and exigencies of the public render this desirable.'"
400 So.2d at 1214.
The undisputed proof was that the Commission had continuously maintained the Tuttle lots for highway purposes at least since 1950 by regularly mowing, picking up trash and limbs, and regularly cleaning out culverts installed for drainage purposes.
The ever broadening duties and responsibilities of the Commission to provide for the safety and convenience of the traveling public are made crystal clear in this recent enactment of the Legislature:
"The Mississippi State Highway Commission is hereby authorized to acquire by gift, purchase, or otherwise, and to have the state highway department improve and maintain strips of land necessary for the restoration, preservation and enhancement of scenic beauty adjacent to the state highway rights-of-way. The commission may acquire and have the state highway department develop publicly owned and controlled rest and recreation areas and sanitary and other facilities within or adjacent to the highway right-of-way reasonably necessary to accommodate the traveling public."
MCA Section 65-1-51 (1981 Supp.).
The chancellor was correct in holding that the Commission had used the Tuttle lots continuously and uninterruptedly for in excess of 35 years for highway purposes, as contemplated by the laws of Mississippi, and that the term "highway" includes not only the roadway itself but also the entire right-of-way as well.

IV.
Appellant next contends that the chancellor erred in not adjudicating the rights of the parties in Washington Street, Huston Avenue, and the alley in Block 6 of West End Addition, as well as the oil, gas and mineral rights.
Lots 9 through 12, Block 6, West End Addition, in and over which the Commission has an easement for right-of-way purposes, are bounded on the north by Washington Street and on the west by Huston Avenue. On the south these lots are bounded by an alley through the center of block 6. Although these streets and the alley were dedicated to the public use when the plat was officially approved and placed of record, they had not been laid out and opened up at the time the Commission acquired an easement in and over these lots for right-of-way purposes.
When the Highway Commission included unopened Washington Street and Huston Avenue within its highway right-of-way, it preempted the use of these streets by the City of Hattiesburg and by the citizens thereof for street purposes. If and when the Commission legally abandons all or any portion of its right-of-way in Washington Street or Huston Avenue, the disposition of such abandoned portion would be governed and controlled by applicable Mississippi law. We have noted MCA section *335 65-1-75 (Supp. 1981), but express no opinion as to the applicability or non-applicability of this statute to any possible future factual situation that might develop.
Inasmuch as the Commission only acquired an easement for right-of-way purposes in and over the surface of the four Tuttle lots, the ownership of the oil, gas and minerals remained in the owners of the fee and their successors in title, either by deed or valid tax sale.
The chancellor was correct in not adjudicating the rights of the parties in Washington Street and Huston Avenue.

V.
The next contention made by the appellant is that the chancellor erred in holding that the Commission was immune from suit for willful trespass under the doctrine of sovereign immunity. There is no merit in this contention.
In French v. Pearl River Valley Water Supply District, 394 So.2d 1385 (Miss. 1981), we declined to abolish the doctrine of governmental immunity, restating the general rule that a general grant of statutory authority to sue a governmental subdivision or agency does not create any liability, and suit may be maintained thereunder only for such liability as is authorized by statute, expressly or by necessary implication.
The chancellor was correct in holding the Commission immune from suits for willful trespass under the doctrine of sovereign immunity.

VI.
Hattiesburg Realty Company and Pine Belt Land Company contend that the chancellor erred in finding that their claims were barred by the statute of limitations.
In view of our finding that the Commission only used the Tuttle lots consistent with its easement rights for right-of-way purposes and, therefore, acquired no further title or right by adverse possession, the chancellor erred in finding that the claims of Hattiesburg Realty and Pine Belt were barred by the statute of limitations.

VII.
The Curries contend that their proof was sufficient to establish title in them by adverse possession for the 10-year statutory period before the October 5, 1940, Tuttle deed to the Commission, and that if that proof were insufficient then they have established title in them by virtue of their adverse possession since October 5, 1940.
There is no merit in either of these contentions. On December 30, 1939, the late Alexander Currie, the predecessor in title to all of the Curries, conveyed to the State Highway Commission for right-of-way purposes all of Block 6 except Lot 7 and Lots 9-12, West End Addition, and other properties. By thus excepting Lots 9 through 12, Block 6, West End Addition, the grantor, who died in 1947, acknowledged that he did not own Lots 9 through 12 and, therefore, was making no claim to them.
The evidence of adverse possession after 1940 (and there was none as to the easement rights of the Commission) was very weak, and any acts testified to were sporadic and not continuous. Since the testimony was disputed and thus was a factual question to be determined by the chancellor, we cannot say that he abused his discretion in finding that the Curries failed to establish a claim to the property by adverse possession after October 5, 1940.

VIII.
Pine Belt Land Company contends that the chancellor erred in ruling that the city and county tax sales of the four Tuttle lots, on September 15, 1941, for the 1940 city, county and state advalorem taxes, were void, and that any liens for such taxes for the year 1940 were extinguished when the Commission purchased the property on October 5, 1940.
In answering this assignment of error, we need only refer to the fact that the only right acquired by the Commission in the Tuttle deed of October 5, 1940, was an easement for right-of-way purposes and *336 state again that all other rights and title remained in the Tuttle heirs and were subject to sale by the City of Hattiesburg and Forrest County for non-payment of the 1940 city, county and state advalorem taxes.
The chancellor's only reason for finding that these tax sales were void was because of the Tuttle deed of October 5, 1940, to the Commission. These tax sales of September 15, 1941, of course, would not affect the easement rights granted to the Commission almost a year before, but these sales would be valid as to any other rights not purchased or acquired from the land owners, and, therefore, still retained by them. See City of Laurel v. Weems, 100 Miss. 335, 56 So. 451 (1911) and Whitworth v. Miss. State Hwy. Com'n, supra.
So the chancellor was in error in ruling that these tax sales were void and that the liens for 1940 city, county and state advalorem taxes were extinguished when the Commission purchased from the Tuttle heirs an easement for right-of-way purposes on October 5, 1940.
The tax sales of September 15, 1941, for the unpaid 1940 city, county and state advalorem taxes being valid, subsequent tax deeds issued pursuant thereto conveyed to the grantees therein all rights and title remaining in the Tuttle heirs.
Pine Belt Land Company, through mesne conveyances, having acquired all rights and title acquired by the purchasers at the tax sales of September 15, 1941, is now the owner of fee simple title to Lots 9 through 12, Block 6, West End Addition to the City of Hattiesburg, Mississippi, subject only to the easement rights for right-of-way purposes purchased by the State Highway Commission from the Tuttle heirs on October 5, 1940.
The decree of the lower court is reversed insofar as it:
1. Dismissed the First Amended Cross-bill of Pine Belt Land Company;
2. Found that the Commission had acquired fee simple title to the four Tuttle lots by adverse possession under color of title and thus confirmed title in the Mississippi State Highway Commission, and cancelled of record any and all purported conveyances from and after October 5, 1940, insofar as such conveyances related to the title of the Commission; and
3. Found that the City, and County and State tax sales of the four lots in question on September 15, 1941, for 1940 advalorem taxes thereon were void and of no force and effect.
Pine Belt Land Company is found to be the owner of fee simple title to the four Tuttle lots (the lands in dispute), subject only to the easement for right-of-way purposes in and over the surface of these four lots acquired by the Commission from the Tuttle heirs by deed dated October 5, 1940.
In all other respects, not inconsistent with this opinion, the decree of the lower court is affirmed.
Court costs both in the lower court and this Court will be assessed: One-fourth against Hattiesburg Realty Company; One-fourth against the State Highway Commission; One-fourth against Pine Belt Land Company; and One-fourth against the Curries and Cloverleaf Mall, Ltd.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.