## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00470-SCT

*H. H. LUPO, WALLACE R. GUNN, MILTON A. SCHLESINGER, LORA RANDOLPH McCLURE, EVELYN McCLURE, WAYNE L. McCLURE AND WORTHY McCLURE*

*v.*

*STATE OF MISSISSIPPI, DEPARTMENT OF TRANSPORTATION, HUB INVESTMENT COMPANY, A MISSISSIPPI CORPORATION, IDA MOSELY, MOLLY SEAL, HATTIESBURG HANDLE & LUMBER CO., DAVID LUMFORD, KELLY S. CONN, ELIJAH JONES, AND ANY AND ALL PERSONS UNKNOWN HAVING OR CLAIMING ANY LEGAL OR EQUITABLE INTEREST OR TITLE IN THE LANDS DESCRIBED IN PLAINTIFFS' COMPLAINT*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/1998 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WALLACE R. GUNN |
| | MILTON A. SCHLESINGER |
| ATTORNEYS FOR APPELLEES: | PAUL RICHARD LAMBERT |
| | ROY MERRITT TIPTON |
| | G. MARTIN WARREN, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/9/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/30/2000 |

### BEFORE PRATHER, C.J., SMITH AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. H. H. Lupo, Wallace R. Gunn, Milton A. Schlesinger, Lora Randolph McClure, Evelyn McClure, Wayne L. McClure, and Worthy McClure, collectively referred to as Lupo, appeal the final judgment of the Forrest County Chancery Court in this suit to confirm title which held that Lupo had a fee simple title to the real property in question subject to an easement held by the Mississippi State Department of Transportation.[1] The lower court further held that Lupo did not sustain any compensable damages flowing from the MDOT's use of their recorded easement.

¶2. In the interest of clarity, this Court has restated Lupo's assignments of error and consolidated those which raise similar issues. Lupo appeals to this Court requesting consideration of the following alleged errors:

I. WHETHER THE INTEREST IN THE SUBJECT PROPERTY ACQUIRED BY THE MDOT IS EXEMPT FROM TAXATION

II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE MDOT WAS ENTITLED TO FULL USE OF THEIR RIGHT-OF-WAY INTEREST

III. WHETHER THE CHANCELLOR ERRED IN HOLDING THAT LUPO DID NOT SUSTAIN COMPENSABLE DAMAGES RESULTING FROM THE MDOT'S USE OF ITS RIGHT-OF-WAY INTEREST

Finding these issues to be without merit, we affirm.

## FACTS

¶3. The controversy surrounding this particular parcel of land[2] and its history can be traced back to a tax sale in Forrest County prior to our Country's involvement in the Second World War. The Forrest County Board of Supervisors prepared a fiscal year budget for October 1, 1939, through September 30, 1940, based in part upon projected land tax returns for property situated within the borders of Forrest County. Pursuant to the statutory predecessors of Miss. Code Ann. § 27-35-1 (Supp. 2000), a tax lien attached to every piece of real property in Forrest County on January 1, 1940. On July 17, 1940, the Forrest County Board of Supervisors published a notice to the taxpayers of Forrest County that the assessment rolls were ready for inspection should someone have an objection to the amount levied on their property. R. Lee Edmonson failed to pay the assessed and subsequently delinquent taxes from 1940 on his property.

¶4. Lupo's predecessor in title, D. Seward, purchased the subject real property at a November 17, 1941, tax sale. The property Seward purchased was sold because Edmonson, the previous owner, still had delinquent 1940 taxes assessed on the property. After the tax lien attached on January 1, 1940, but before the tax sale on November 17, 1941, the MDOT[3] purchased a right-of-way interest in the subject real property from Edmonson. The record reflects that the transaction took place during the early part of 1940, and soon thereafter the MDOT began construction on a highway across the property within the legal rights of their interest. Some of the instruments used in the sale of the property and right-of-way interest were titled "warranty deeds." All of the instruments were duly filed and recorded in 1940. The right of redemption by the owner from the tax sale expired on November 17, 1943, and Seward's descendants sold the property to Harold H. Lupo in 1973, who has since owned the property along with the other appellants.

¶5. The property was removed from the tax rolls after the easement was granted and recorded and the tax sale became final. In 1973, Lupo approached the chancery clerk's office and had the property placed back on the tax roll. Lupo has diligently paid the taxes assessed upon the property each year. During the intermittent thirty or more years, no taxes were paid on the property.

¶6. On March 1, 1996, Lupo filed a complaint to confirm and quiet title to the land and recover damages they suffered from unauthorized use of the land, specifically the construction of a highway and "cloverleaf" highway interchange across the property. The MDOT was the only interested party to file an answer to the complaint. A default judgment was entered against the other named defendants who failed to respond to the suit. On February 28, 1997, Lupo moved for a partial summary judgment requesting that the trial court confirm fee simple title in them and extinguish the right-of-way easement held by the MDOT. The MDOT

filed the appropriate responses to Lupo's motion. On March 12, 1998, the chancellor entered a partial summary judgment in favor of Lupo confirming their fee simple title subject to the MDOT's continued use of the accrued right-of-way interest.

¶7. On November 25, 1998, the chancellor rendered his final judgment. The chancellor held that as a matter of law Lupo did not sustain any damages from the use of the property by MDOT since MDOT used the property in accordance with its easement right. On December 16, 1998, Lupo initiated this appeal.

## STANDARD OF REVIEW

¶8. When reviewing decisions rendered by our chancery courts we must remember that our "[c]hancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." *Sandlin v. Sandlin*, 699 So. 2d 1198, 1203 (Miss.1997); *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss.1994).

¶9. An appeal of a decision to grant summary judgment requires this Court to review the case de novo. *Crain v. Cleveland Lodge 1532*, 641 So. 2d 1186, 1188 (Miss.1994). Furthermore, summary judgment is a powerful tool which "should be used wisely and sparingly." *Martin v. Simmons*, 571 So. 2d 254, 258 (Miss.1990). It should only be granted when "there is no genuine issue as to any material fact." M.R.C.P. 56(c). In addition, all evidentiary matters are viewed in a light most favorable to the non-movant. *Id.*; *Morgan v. City of Ruleville*, 627 So. 2d 275, 277 (Miss.1993).

## LEGAL ANALYSIS

### I. WHETHER THE INTEREST IN THE SUBJECT PROPERTY ACQUIRED BY THE MDOT IS EXEMPT FROM TAXATION

¶10. Lupo argues that the ad valorem taxes for the fiscal year October 1, 1939-September 30, 1940 became a lien as of January 1, 1940 and attached to all lands in Forrest County despite ownership or easement rights, including those rights obtained by State entities. Lupo believes that if an interest is not separately assessed, sale of the land for unpaid taxes carries with it all interests above and below the surface and extinguishes any and all rights attached. Lupo therefore asserts that since the lien retroactively attached to the property, the MDOT transaction was subject to and invalidated by that tax lien. We disagree.

¶11. Tax liens attach on a particular date each year as set by statute. *Vicksburg Waterworks Co. v. Vicksburg Water Supply Co.*, 80 Miss. 68, 72, 31 So. 535, 535 (1902). Furthermore, even though the amount of liability may be undetermined when title to the property is transferred, by law the lien relates back to the fixed statutory date. *Vicksburg Waterworks Co.*, 80 Miss. at 72, 31 So. at 535. The validity of a tax sale is determined by the statutory law in effect during the time the sale was made. *Board of Trustees of Monroe County Bd. of Educ. v. Rye*, 521 So. 2d 900, 905 (Miss. 1988).

¶12. Lupo's "timeline" argument was made to this Court in *City of Laurel v. Weems* and found meritless. This Court explained Weems's contention saying

> The chief contention of appellee is that by virtue of section 4255, Code of 1906, the lien for taxes attached to the property on the 1st day of February, 1906, while the property was the subject of

private ownership and liable to taxes, and that when the taxes were ascertained and became due it related back to the 1st day of February, 1906, and did not abate when the city purchased the same.

*City of Laurel v. Weems,* 100 Miss. 335, 340, 56 So. 451, 452 (1911). In addressing this argument, the Court concisely stated that "[I]t is not to be supposed that the State ever intended to tax the property of a governmental agent of its own." *City of Laurel,* 100 Miss. at 340, 56 So. at 452-3. Quoting Cooley on Taxation, (3rd Ed.) p. 263, the Court also noted that

> Before noticing the exemptions expressly made by law, it will be convenient to speak of some which rest upon implication. Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for governmental purposes.

*Id.* at 453.

¶13. Lupo relies heavily on *Equity Servs. Co. v. Mississippi State Highway Comm'n*, 192 So. 2d 431, 432 (Miss. 1966) believing that it ostensibly overrules *City of Laurel*. The cases are easily distinguishable. In *Equity Servs.*, the property owner executed the warranty deed to the State Highway Commission *after* the property was sold for delinquent taxes, and the State Highway Commission therefore only acquired a right of possession and redemption instead of legal title. In *City of Laurel* as well as in the case at bar, the instruments in question were executed *prior* to the tax sale. *City of Laurel*, 56 So. at 452.

¶14. Although non-binding, the Mississippi Attorney General opined that the holdings in *Davis v. City of Biloxi*, 183 Miss. 340, 184 So. 76 (1938) and *City of Laurel v. Weems*, 100 Miss. 335, 56 So. 451 (1911) provide that the ad valorem tax lien against a parcel of land is extinguished if a public body acquires it. Griffith, May 13, 1992 Miss. A.G. Op. #92-0319 (May 13, 1992). Recently, this Court stated that an easement appurtenant is not extinguished by a tax sale. *[Hearn v. Autumn Woods Office Park Property Owners Ass'n](#)*, 757 So.2d 155, 165 (¶ 51) (Miss. 1999).

¶15. By its express terms, Miss. Code Ann. § 27-35-5 (1995)[(4)](#) imposes personal liability for ad valorem taxes on the owner of the property as of the January 1 lien date. We applied the statutory predecessor to Miss. Code Ann. § 27-35-5 in *Gloster Lumber Co. v. Adams County*, 173 Miss. 865, 163 So. 541 (1935) wherein we imposed personal liability on the real property owner for the 1934 ad valorem taxes even though the owner sold the property in question to the U.S.D.A. during that same year. Any tax liens that attached to property and assessed against the State or its agents were extinguished as a matter of law when the State acquired its easement. Lupo's first assignment of error is without merit.

### II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE MDOT WAS ENTITLED TO FULL USE OF THEIR RIGHT-OF-WAY INTEREST

¶16. Lupo's next assignment of error asserts that since the MDOT did not follow the statutorily provided procedures to obtain an exemption for the easement against the assessed tax lien, the MDOT did not receive any viable interest in the land.

¶17. In *Mississippi State Highway Comm'n v. McClure*, 536 So. 2d 895 (Miss. 1988), we examined what interest the MDOT acquired in certain lands conveyed to it by warranty deed in 1940. The Mississippi Code of 1930 § 4998 empowered the MDOT to acquire an easement. *McClure*, 536 So. 2d

at 897. This language was recodified in Miss. Code Ann. § 65-1-47 which was additionally amended to empower the Commission to acquire fee simple interest along with the authority to sell when the property is not needed for its original purpose. *Id*. at 897. The *McClure* Court held that the MDOT could not convey fee simple title of the subject property to a third party but instead could only abandon the easement. *Id.* at 897. In the present case, all but two of the instruments used to convey the subject property interests to MDOT were entitled warranty deeds. Regardless of the title on the instruments, it is uncontested that the only interest the MDOT could legally obtain is a right-of-way interest.

¶18. The present case is analogous to *Hattiesburg Realty Co. v. Mississippi State Highway Comm'n*, 406 So. 2d 329 (Miss. 1981) as it relates to Lupo's legal entitlement to fee simple ownership of the real properties resulting from the tax sale of 1941. It should be noted that the properties in each case are a part of the same highway project. We stated in *Hattiesburg Realty* that MDOT could only acquire a right-of-way easement for highway purposes under the statutes prevailing in 1940. *Hattiesburg Realty Co.*, 406 So. 2d at 335. If the MDOT abandoned its use of the right-of-way as a highway, then Lupo's rights acquired by the tax sale would be valid as to any rights not purchased or acquired from the land owners. Of course, the right-of-way is still in use as a thoroughfare through Hattiesburg as a highway for the benefit of the taxpayer citizens of Mississippi. Therefore, the chancellor correctly held that MDOT had full use of the right of way.

> III. WHETHER THE CHANCELLOR ERRED IN HOLDING THAT LUPO DID NOT SUSTAIN COMPENSABLE DAMAGES RESULTING FROM THE MDOT'S USE OF ITS RIGHT-OF-WAY INTEREST

¶19. In addition to their request to confirm and quiet title, Lupo also raises the issue of their entitlement to damages from the MDOT for its use of the property since 1941. Lupo claims that their 1941 tax title gives them all incidents of ownership, without exception, to include the easement rights, since the 1940 tax assessment valued the properties as they were on January 1, 1940, with the easements of rights-of-way. The final judgment entered by the chancellor held that title to the subject property was confirmed in Lupo with such title subject to the continued use by the MDOT of its easement and right of way estate. The lower court further found that Lupo did not sustain any damages since the MDOT is entitled to the full use of the property in accordance with its easement rights.

¶20. The record reflects that the real properties in question were conveyed by Edmonson through a warranty deed dated March 21, 1940, to the MDOT, and duly recorded soon thereafter. The tax sale was held on November 17, 1941. Lupo acquired their interests after that date and were entitled to fee simple ownership of the properties subject to the easement.

¶21. Lupo argues that the deeds executed by Edmonson bound all the interests and was superceded by the tax lien day of January 1, 1940, and that the deeds of trust executed by Edmonson would have been wiped out by the tax sale of November 17, 1941, to D. Seward.

¶22. Lupo claims there is no law which supports the proposition that a tax sale purchaser would be on notice of such deeds and would take title subject to such deeds. In short, the purchaser at a tax sale only has to look at the tax lien for which he is buying the land because he knows that any conveyance after the tax sale lien date is wiped out by the tax sale.

¶23. We agree with the chancellor that the question before us is one of notice and timing. In short, the tax

sale occurred twenty months after the conveyance to MDOT of the easement and anyone purchasing at a tax sale would have notice of the existence of prior conveyances. Therefore, any compensation that exchanged in advance of the tax sale was not detrimental to the tax sale purchaser, thereby not entitling Lupo to damages.

## CONCLUSION

¶24. After reviewing the chancellor's findings, we cannot say that he erred in granting partial summary judgment and the final judgment in this case. No genuine issues of fact exist regarding the title to the property, the use of the easement, or an entitlement to damages. Therefore, we affirm the judgment of the Forrest County Chancery Court.

¶25. **AFFIRMED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**

1. Additional appellees in this matter are: HUB Investment Company, Ida Mosely, Molly Seal, Hattiesburg Handle and Lumber Co., David Lumford, Kelly S. Conn, Elijah Jones, and any and all persons unknown having or claiming any legal or equitable interest or title in the lands described in Lupo's complaint. They will be referred to collectively as MDOT.

2. The location of the land in question is described in the original complaint as "part of the Southeast Quarter of the Southeast Quarter, (SE/4 of SE/4), of Section 17, Township 4 North, Range 13 West, Forrest County, Mississippi."

3. MDOT was formerly the Mississippi State Highway Commission.

4. Miss. Code Ann. § 27-35-5 (1995) requires that:

> Every lawful tax including all increases, penalties and interest which may be or become owing or assessed, levied or imposed by the state or by a county, municipality or levee board, whether ad valorem (including all school district taxes), privilege, excise, income or inheritance, is a debt due by the person or corporation owning the property or carrying on the business or profession upon which the tax is levied or imposed . . . and may be recovered by action by any officer authorized to sue for or collect same. Said increases, interest and penalties shall be recoverable as a part of the tax with respect to which they are imposed. The recovery of a personal judgment for taxes on land or personal property against the owner shall not extinguish the tax lien. In all actions for the recovery of ad valorem taxes the assessment roll shall be only prima facie correct.