J. Edwin Blalock appeals from a summary judgment in favor of Joseph Conzelman, Jr., and Elsie Conzelman in their action seeking to prevent Blalock from cutting trees on their easement across Blalock's property. We reverse and remand.
The dispositive facts are undisputed. The Conzelmans and Blalock own contiguous lots 1 and 2, respectively, which lie along Cherokee Road in Mountain Brook. Lots 1 and 2 were created in 1972 by the division of a single parcel of real estate by Mr. and Mrs. Alan Woodward, the owners of the parcel. On the original parcel were two dwellings, both of which were serviced a common driveway. After the parcel was subdivided, one dwelling was on lot 1 and the other was on lot 2.
Lots 1 and 2 are, like the parcel from which they were created, subject to a restrictive covenant requiring each lot to have at least 200 feet of "frontage." After the subdivision, a new driveway was installed to service the dwelling on lot 2. Lot 1 continued to be serviced by the driveway that formerly serviced both dwellings. That driveway cut across a corner of what became lot 2.
In order to provide the owners of lot 1 with a means of ingress to and egress from their property, and, at the same time, to retain for lot 2 the minimum frontage required by the restrictive covenant, the conveyance of lot 1 to the Conzelmans from the Woodwards contained an express easement across the corner of lot 2, described as follows:
 "Lot 1, according to a resurvey, as recorded in Map Book 98, Page 42, in the Probate Office of Jefferson County, Alabama, of Parcel A-1, Evalina W. Brown's Resurvey, together with an easement for ingress and egress to and from said property, as shown in said resurvey, and reserved by the grantors in their deed to Robert B. Warnock and Jordan Phillips Warnock recorded in Real Volume 880 at Page 19 in the Office of the Judge of Probate of Jefferson County, Alabama."
The deed from the Woodwards to the Warnocks, Blalock's predecessors in title, had expressly reserved an easement "for ingress and egress to and from the property retained by the [Woodwards] known as Lot 1."[1] The easement, as described in the deed, is substantially wider than the driveway.
Since 1972, the Conzelmans have used the driveway as their means of ingress to and egress from lot 1. Also, since 1987, when Blalock purchased lot 2, he, as well as the Conzelmans, "pruned vegetation" in the area of the easement.
This dispute arose when Blalock decided to construct a circular driveway that would connect with the Conzelmans' driveway in the area of the easement across his property. When the Conzelmans realized that Blalock's proposed driveway would involve cutting some trees adjacent to that part of their driveway that crossed Blalock's property, they filed this action. More specifically, their complaint alleged:
 "7. Plaintiffs, their guests, invitees, visitors, servants and service vehicles have used the said easement continuously, openly, notoriously, adversely and exclusively for ingress and egress and they have maintained, landscaped, cut the grass and pruned the oak trees located thereon for more than twenty-four (24) years next preceding the filing of this complaint.
 "8. Defendant Blalock has made known to plaintiffs that he plans, intends and expects to immediately construct a new driveway from his residence to Cherokee Road over, on and across the said ingress and egress easement. In doing so, defendant Blalock has *Page 4 
contracted to have the oak trees . . . cut and removed from the easement. Said oak trees are more than one hundred (100) years old and provide beauty and shade for the plaintiffs' and defendant Blalock's properties and other properties along Cherokee Road. The proposed driveway will extend from defendant Blalock's property and connect into plaintiff's existing easement for ingress and egress. The oak trees within the ingress and egress easement provide shade, reduce energy costs, protect against soil erosion, [and] improve air quality by replacing oxygen and absorbing carbon dioxide. The oak trees enhance the value of plaintiffs' and defendant Blalock's properties and enhance marketability as well as add beauty to the community. The cutting or removal of the oak trees will have a deleterious effect on the properties of plaintiffs, defendant Blalock and other property owners at Cherokee Road and will have an adverse effect on the habitability of the residences of plaintiffs, defendant Blalock and others residing on Cherokee Road in the near vicinity.
 "9. Plaintiffs' easement for ingress and egress is an exclusive easement and defendant has no right to connect, tie into, or use plaintiffs' easement for ingress and egress or any portion thereof. Plaintiffs have had the sole and exclusive use of said easement at all times for a period of more than twenty-four (24) years next preceding the filing of this complaint and they have been in open, continuous, uninterrupted, adverse, exclusive and hostile possession and use of all of the land within said ingress and egress easement."[2]
(Emphasis added.) The Conzelmans sought a judgment declaring that Blalock had "no right to connect into or use [the] easement for ingress and egress, and . . . no right to cut or remove the one hundred (100) year old oak trees located within [the] easement." They also sought injunctive relief to enforce the judgment.
Each party moved for a summary judgment, supporting their motions with affidavits. The trial court granted the Conzelmans' motion, concluding that "[t]here is no disputed issue of fact and [that] the [Conzelmans] are entitled to the relief sought as a matter of law." More specifically, it declared that the Conzelmans have a "right to the exclusive use of the easement," which, it concluded, they had acquired either by express grant or by prescription. (Emphasis added.) It further concluded that "[t]he trees and landscaping around that driveway are a part of what they acquired." It held that Blalock had "no right to connect his driveway into the driveway of the [Conzelmans] or to use or interfere with . . . the trees and vegetation," and it permanently enjoined Blalock from doing so.
Blalock appealed, contending that the trial court erred in denying his summary-judgment motion and in granting the Conzelmans' motion. We agree; the Conzelmans have no right, either by prescription or by express grant, to the "exclusive use of the easement."
 I. Prescriptive Easement
The elements necessary to establish a prescriptive easement are well settled. As we stated in Bull v. Salsman, 435 So.2d 27,29 (Ala. 1983):
 "To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner. The presumption is that the use is permissive, and the claimant has the burden of proving that the use was adverse to the owner."
Although the Conzelmans acknowledge these general principles, they cite no *Page 5 
authority relevant to the issue whether, or under what circumstances, the holder of an express easement may acquire an easement by prescription over the same area of the easement granted by the express easement. On this point, however, "[a] Kentucky court [has laid] down the rule that one having an easement over the land of another cannot change the character of his right to an adverse holding of the land itself. . . ." Williamsv. Patterson, 198 Miss. 120, 129, 21 So.2d 477, 480 (1945). SeeO'Banion v. Cunningham, 168 Ky. 322, 323, 182 S.W. 185, 186
(1916). More specifically, O'Banion stated:
 "By the purchase of the lands, to which the passway was appurtenant, and by their deeds conveying the passway, defendant and his grantors acquired a mere easement over the land in question. Clearly, where a party has an easement over the land of another, he cannot change the character of his right to an adverse holding of the land itself, unless he either gives the true owner actual notice or his acts and declarations of a hostile claim are so open and notorious as to leave no doubt in the mind of the true owner."
Id. (emphasis added).
This rule is consistent with the principle that "a possession permissive in its inception cannot become adverse to the owner until a positive assertion of a right hostile to the owner is brought to him." Monaghan v. Wagner, 487 So.2d 815, 819 (Miss. 1986), citing Williams v. Patterson, 198 Miss. 120, 21 So.2d 477
(1945); see also Taylor v. S.S. Kresge Co., 326 Mich. 580,40 N.W.2d 636 (1950). "Ordinary acts of ownership, consistent withpermissive possession, are not sufficient to constitute an adverse holding capable of ever ripening into a title." Harkins Co. v.Lewis, 535 So.2d 104, 117 (Ala. 1988) (emphasis added).
When considered in the context of these principles, the activities in which the Conzelmans have engaged since 1972 regarding the easement are not inconsistent with the "ordinary acts of ownership" arising under the deeds from the Woodwards conveying lots 1 and 2; those activities were insufficient, as a matter of law, to act as notice to Blalock of the Conzelmans' intent to change the legal basis of the easement from an express easement to a prescriptive easement. Indeed, the Conzelmans alleged in their complaint that they and Blalock have jointlytended the vegetation within the easement and that that vegetation "enhance[s] the value of plaintiffs' and defendant Blalock'sproperties and enhance[s] marketability as well as add[s] beauty to the community." (Emphasis added.) They also alleged that the "cutting or removal of the oak trees" would "deleterious[ly]" and "adverse[ly]" affect, not only their property, but also Blalock'sproperty. These allegations belie the Conzelmans' contention that their upkeep of the vegetation in the area of the easement was notoriously adverse and hostile to the interests of Blalock. Blalock could have viewed the Conzelmans' activities in the easement area as a neighborly act, concluding that, consistent with their present allegations, they merely intended to confer a mutual benefit. Although the Conzelmans installed a gate at the entrance of the driveway, they presented no evidence that they kept the gate locked.
In short, the record does not support the Conzelmans' claim that their express easement was converted to an easement by prescription. Consequently, their rights are governed by the terms of conveyance and reservation in the deeds from the Woodwards conveying lots 1 and 2.
 II. Express Easement
The general rule in Alabama and elsewhere is "that the [fee] owner of a servient estate may himself use the land upon which an easement has been dedicated so long as such right does notconflict with the purpose and character of the easement." Duke v.Pine Crest Homes, Inc., 358 So.2d 148, 150 (Ala. 1978) (emphasis added); see Carter v. Stringfellow, *Page 6 293 Ala. 525, 306 So.2d 273 (1975) ("The right to use the land on which an easement has been dedicated remains in the owner of the servient estate so long as such right does not conflict with the purpose and character of the easement"); and Collins v. Alabama Power Co., 214 Ala. 643,108 So. 868 (1926). Moreover, "[a] principle of concurrent, rather than exclusive, use underlies the law concerning easement."McMahon v. Hines, 298 Ill. App.3d 231, 239, 697 N.E.2d 1199,1206, 232 Ill. Dec. 269, 276 (1998). "Therefore, use of an easement by both landowners must be permitted in accordance with their individual interests." Id. See also Fedorko Properties,Inc. v. C.F. Zurn Assocs., 720 A.2d 147 (Pa.Super.Ct. 1998) (the mere use of the term "exclusive easement" in an easement conveyance did not "grant an easement exclusive of the servient estate"). Nothing in the deeds conveying lots 1 and 2 suggests the Conzelmans' easement was granted or reserved exclusively for them.
Moreover, pursuant to the general rule, the parties have concurrent rights to the use of the easement, and neither party can prevent the other from using the easement in a manner consistent with the purposes for which the easement was created. Thus, the existence of the easement creates mutual rights and obligations.
"[T]he landowner may not, without the consent of the easement holder, unreasonably interfere with the latter's rights or change the character of the easement so as to make the use thereof significantly more difficult or burdensome." Boss v. RocklandElec. Co., 95 N.J. 33, 38, 468 A.2d 1055, 1058 (1983). Conversely, the easement holder "`can not change its character, or materially increase the burden upon the servient estate.'" Whitev. Walsh, 105 Cal.App.2d 828, 832, 234 P.2d 276, 278 (App. 1951) (emphasis added) (quoting Burris v. People's Ditch Co., 104 Cal. 248,252, 37 P. 922, 923 (1894)). Indeed, "it is elementary law respecting easements that neither the dominant owner nor the servient owner is permitted to materially alter the character of the servitude." Gerber v. Appel, 164 S.W.2d 225, 228 (Mo.Ct.App. 1942) (emphasis added), quashed in part on other grounds, State exrel. Appel v. Hughes, 351 Mo. 488, 173 S.W.2d 45 (1943). Cases involving a change in the character of the easement are, therefore, distinguished from those involving merely an increase in usage of the easement. Karches v. Adolph Invest. Corp.,429 S.W.2d 788, 793 (Mo.Ct.App. 1968); see also 25 Am. Jur. 2dEasements and Licenses § 87, at 493-94 (1966). This case involves the Conzelmans' right to change the character of the easement.
At its core, the Conzelmans' action is about vegetation, that is, the Conzelmans assert a right to certain trees and vegetation growing in the area of the easement. However, the easement created by the deeds conveying lots 1 and 2 is only "for ingress and egress to and from [lot 1] as shown in [Avalina W. Brown's resurvey of the subdivided lots]." Nothing in those deeds addresses vegetation. Thus, the Conzelmans seek to change the essential character of the easement from that of a right of way, to — in effect — one of shade and air. See Metcalf v. Houk,644 N.E.2d 597, 600 (Ind.Ct.App. 1994) ("Generally an easement for ingress and egress confers only the right to pass over the land and not to control the real estate or install improvements"); see also Upson v. Stafford, 205 Ga. App. 615, 616, 422 S.E.2d 882, 884
(1992) (the holder of an access easement had no right to a "buffer of trees" between his easement and adjoining property); (Solow v.Liebman, 175 A.D.2d 120, 121, 572 N.Y.S.2d 19, 20 (N.Y.App. Div. 199 1) (holder of an access easement "had no right, as a matter of law," to prevent the owner of the servient estate from removing trees from the easement).
Moreover, the presence or absence of vegetation is not material to the Conzelmans' ability to use the easement. It is, however, highly material to Blalock's ability to use the easement. The trial court *Page 7 
erred, therefore, both (1) because its order allows the Conzelmans to change the essential character of the easement; and (2) because its order prevents Blalock from gaining access to the easement for his own use.
In summary, the deed from the Woodwards to the Conzelmans does not give the Conzelmans the right to prohibit Blalock from using the easement, and they have not acquired an easement by prescription. Consequently, they cannot prevent Blalock from removing the vegetation reasonably necessary to gain access to the easement. For these reasons, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Houston, Kennedy,[3] See, Lyons, and Johnstone, JJ., concur.
Hooper, C.J., and Maddox, J., dissent.
[1] That deed described the easement in metes and bounds.
[2] The only factual dispute in this case regards the ages of some of the oak trees.
[3] Justice Kennedy's vote in this case was made prior to his resignation on June 11, 1999.