CRAWLEY, Judge.
Gary Price and Martha Price (the “ser-vient estate”) own real estate subject to an easement that is now owned by Deborah McNeil (the “dominant estate”). They are adjacent landowners. The servient estate sued the dominant estate, alleging that the dominant estate had wrongfully obstructed their use of the easement by erecting a locked gate. The trial court eventually ruled in favor of the dominant estate, concluding that the dominant estate had an “exclusive” easement that barred any use by the servient estate.
The servient estate appealed to the supreme court, which transferred the case to this court, pursuant to Ala. Code 1975, § 12-2-7(6). We reversed the trial court’s judgment, holding that, as a matter of law, the easement was not “exclusive.” See Price v. McNeil, 771 So.2d 1054 (Ala.Civ.App.2000) (Price I). We instructed the trial court on remand “to determine the extent to which the [servient estate is] allowed to use the easement.” 771 So.2d at 1057. On remand, the trial court ordered that the dominant estate can maintain the locked gate, but that the servient estate is to have a key and that they can use the key to open the gate and then lock it back after each use. The servient estate appealed to the supreme court, which again transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6).
In Price I, we instructed the trial court on remand to follow the principles set forth by our supreme court in Blalock v. Conzelman, 751 So.2d 2 (Ala.1999), and Duke v. Pine Crest Homes, Inc., 358 So.2d 148 (Ala.1978), to determine to what extent the servient estate may use the easement. The Duke court stated that a servient estate may use an easement as follows:
“It is well settled in Alabama that the owner of the servient estate may himself use the land upon which an easement has been dedicated so long as [his use] *1086 does not conflict with the purpose and character of the easement.
[[Image here]]
“... [W]e wish to make it clear that the servient owner must not in any way interfere with or impinge upon the rights secured by the dominant estate under the express grant of the easement. ... Nor must use by the servient owner create any such additional burden upon the easement as would interfere with those rights granted by the express terms of the easement.”
358 So.2d at 150, 151 (citation omitted).
The Blalock court stated:
“Moreover, pursuant to the general rule, the [dominant estate and servient estate] have concurrent rights to the use of the easement, and neither party can prevent the other from using the easement in a manner consistent with the purposes for which the easement was created. Thus, the existence of the easement creates mutual rights and obligations.
“ ‘[T]he landowner may not, without the consent of the easement holder, unreasonably interfere with the latter’s rights or change the character of the easement so as to make the use thereof significantly more difficult or burdensome.’ Conversely, the easement holder 1 “can not change its character, or materially increase the burden upon the ser-vient estate.” ’ ”
751 So.2d at 6 (citations omitted).
The servient estate argues that the placement of the locked gate across the easement, regardless of the fact that they now have a key to unlock the gate each time they want to cross the easement, is an “undue burden” on the servient estate. The evidence in the record indicates that the dominant estate placed the gate at the point where the easement accesses a public road. The dominant estate testified that she erected the gate in order to protect “her property” from trespassers. The easement crosses the servient estate for several hundred feet before entering the dominant estate. The servient estate argues that the locked gate should be placed at the point where the easement enters the dominant estate.
The dominant estate’s easement is “[a] perpetual easement for ingress and egress.” In Blalock, the dominant estate had an easement “for ingress and egress to and from said property.” The dominant estate used the easement for a driveway. The servient estate altered the driveway and planned to remove trees and shrubbery along the easement. The dominant estate sued the servient estate, seeking to enjoin it from removing the trees and shrubbery. The trial court enjoined the servient estate from removing the trees and shrubbery. The supreme court reversed, stating:
“At its core, the [dominant estate’s] action is about vegetation, that is, the [dominant estate] assertfs] a right to certain trees and vegetation growing in the area of the easement. However, the easement created by the deeds conveying lots 1 and 2 is only ‘for ingress and egress to and from [lot 1] as shown in [the resurvey].’ Nothing in those deeds addresses vegetation. Thus, the [dominant estate] seek[s] to change the essential character of the easement from that of a right of way, to — in effect — one of shade and air. See Metcalf v. Houk, 644 N.E.2d 597, 600 (Ind.Ct.App.1994) (‘Generally an easement for ingress and egress confers only the right to pass over the land and not to control the real estate or install improvements’); see also Upson v. Stafford, 205 Ga.App. 615, 616, 422 S.E.2d 882, 884 (1992) (the holder of an access easement had no right to a ‘buffer of trees’ between his easement *1087 and adjoining property); Solow v. Liebman, 175 A.D.2d 120, 121, 572 N.Y.S.2d 19, 20 (1991) (holder of an access easement ‘had no right, as a matter of law,’ to prevent the owner of the servient estate from removing trees from the easement).
“Moreover, the presence or absence of vegetation is not material to the [dominant estate’s] ability to use the easement. It is, however, highly material to [the servient estate’s] ability to use the easement.”
751 So.2d at 6.
The easement in this case is likewise limited to an easement for “ingress and egress.” We hold that, just as the control over the vegetation was held not to be material to the use of the easement in Blalock, the placement of the gate across the easement for the protection of the dominant estate, regardless of whether the servient estate is provided a key to. the gate, is not material, or reasonably necessary, to the use of this easement. See Clark v. Kuhn, 171 Or.App. 29, 15 P.3d 37 (2000) (holding that the dominant estate’s placement of a gate across the easement is not reasonably necessary for the purpose of using an easement for ingress and egress); and Drew v. Sorensen, 133 Idaho 534, 538, 989 P.2d 276, 280 (1999) (holding that the placement of a gate across the easement, which barricaded a significant area of the servient estate, is an “unreasonable burden” on the servient estate and is not “reasonable and necessary” to maintenance of the easement). See also Ballington v. Paxton, 327 S.C. 372, 488 S.E.2d 882 (Ct.App.1997) (holding that the ser-vient estate could maintain on the easement a locked fence that did not unreasonably interfere with the dominant estate’s use of the easement).
Therefore, we reverse the trial court’s judgment providing that the dominant estate may maintain a gate on the easement as long as the servient estate is provided a key to the gate. As stated above, the dominant estate, as a matter of law, cannot maintain a locked gate on the easement, because the gate imposes an unreasonable burden on the servient owners. On remand, the trial court is instructed to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ„ concur.