PITTMAN, Judge.
 

 This appeal, taken from a summary judgment entered by the Lauderdale Circuit Court, concerns the relative rights of certain landowners who own properties in a residential subdivision that lies next to Wilson Lake, a man-made reservoir in
 
 *1263
 
 northwest Alabama fed by the waters of the Tennessee River.
 

 Although a copy of the pleadings in the case does not appear in the record,
 
 [1]
 
 we may infer from other filings in the record that in 2008 John F. Hollingsworth, Lou Hollingsworth, Angela Hollingsworth, and Joseph K. Hollingsworth sued Bryan Richardson, Floyd Chamberlain, and Joyce Chamberlain, alleging that the defendants had built a structure on lands owned by the plaintiffs. The civil action, which was initially assigned case no. CV-08-238.00, was apparently removed to a federal court, but was remanded to the trial court, where a new case number designation (no. CV-08-238.80) was assigned. The Chamberlains’ homeowners’ insurance carrier thereafter sought permission, and was allowed, to intervene for the limited purposes of participating in discovery and requesting special findings in the event of an entry of a judgment in favor of the plaintiffs.
 

 The plaintiffs filed a motion for a summary judgment, supported by a number of evidentiary exhibits pertaining to the parties’ chains of title and the regulatory approval of the United States Army Corps of Engineers (“COE”) and the Tennessee Valley Authority (“TVA”) authorizing the construction of a pier and walkway,
 
 i.e.,
 
 the improvements that are primarily at issue. The defendants filed a response to the summary-judgment motion, relying primarily upon an affidavit given by a local TVA program manager. In October 2009, the trial court denied the plaintiffs’ summary-judgment motion and set the case for a February 2010 bench trial.
 

 In January 2010, the defendants filed a motion for a summary judgment, contending that the plaintiffs had failed to show that they held title to, or were otherwise entitled to possession of, the land located below a historical survey line delineating an elevation of 509.34 feet above mean sea level (“the 509.34 contour line”) where the pier and walkway had been built; among other evidentiary exhibits, the defendants relied upon the affidavit of the local TVA program manager that they had previously filed. The plaintiffs filed a response in opposition, averring that they held record title to the land upon which the pier and walkway had been built and, in the alternative, that they held title pursuant to the doctrine of accretion. The plaintiffs’ evi-dentiary submission in response to the defendants’ summary-judgment motion included, among other things, an affidavit given by another TVA manager containing testimony that differed slightly from that appearing in the affidavit given by the TVA program manager that had been submitted by the defendants. The plaintiffs also moved to strike the affidavit of the TVA program manager upon which the defendants relied, alleging that the defendants had failed to comply with federal regulations concerning procurement of testimony of TVA employees.
 

 After a hearing, the trial court denied the motion to strike and granted the defendants’ summary-judgment motion. The plaintiffs timely appealed from the sum
 
 *1264
 
 mary judgment;
 
 [2]
 
 their appeal was transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6).
 

 Our standard of review of summary-judgments is well settled:
 

 “A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R. Civ. P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required.”
 

 Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc.,
 
 671 So.2d 674, 675 (Ala.Civ.App.1995) (citations omitted).
 

 The record reveals that the plaintiffs own Lot 2 of a platted subdivision known as Locust Dell; Richardson owns Lot 1 of that subdivision, and his lot adjoins the plaintiffs’ lot on its northwest border. The Chamberlains own a part of Lot 6 of Locust Dell Addition Two that is located across a slough from Richardson’s lot. We surmise from diagrammatic representations of the lots appearing in the parties’ summary-judgment filings that each of the lots involved is located roughly to the north of Wilson Lake; that each lot is bounded on the side closest to Wilson Lake by the 509.34 contour line; and that each lot is located in the east half of the east half of Section 2, Township 3 South, Range 9 West in Lauderdale County. The actual plat or plats of the Locust Dell subdivision and its additions do not appear in the record.
 

 The record also reflects that in 1920, before Wilson Dam was constructed across the Tennessee River so as to impound Wilson Lake, the United States procured flood easements from certain owners of land located along the Tennessee River near the former Muscle Shoals Canal. Among the landowners who granted flood easements to the United States at that time were S.F. Cunningham, Ollie Cunningham, Susie Cunningham, Florence Cunningham, and H.L. Cunningham; those landowners executed an instrument whereby they granted to the United States “[t]he perpetual right and easement to permanently flood ... land ... lying and being below the 505 foot contour” line identified in an 1895 government survey
 
 [3]
 
 in the east half of the east half of Section 2, Township 3 [South], Range 9 West “lying North of the Muscle Shoals Canal”
 
 (ie.,
 
 the preexisting channel of the Tennessee River). The plaintiffs further adduced evidence tending to show that much of the former Cunningham family lands had been platted and subdivided as the Locust Dell subdivision and that any otherwise-unconveyed lands formerly owned by the grantors of the flood easement had either devolved upon, or had been express
 
 *1265
 
 ly conveyed to, Marie Cunningham by 2008. Marie Cunningham, in turn, conveyed to the plaintiffs via a quitclaim deed her entire interest in “[a]ll real property lying and being below the” 509.34-foot contour in the east half of the east half of Section 2, Township 3 South, Range 9 West.
 

 The record also reflects that, on behalf of the United States, the COE and the TVA jointly regulate and control construction activity along certain navigable waterways of the United States (such as the Tennessee River).
 
 See generally
 
 33 U.S.C. § 401 & 16 U.S.C. § 831y-1. The TVA in particular, as the transferee under 16 U.S.C. § 831f of the interests of the United States in the area of Wilson Dam, has adopted a number of regulations, codified at 18 C.F.R. Part 1304, pertaining to procedures for obtaining that agency’s approval, as is required, for construction projects along the Tennessee River or on “land subject to TVA flowage easements.” 18 C.F.R. § 1304.1 (2010). Among those regulations is one directly pertaining to the parties’ situation, which states in part:
 

 “If the facility is to be built on private land, the applicant must own the fee interest in the land or have an adequate leasehold or easement interest in the property where the facility will be located.
 
 TVA recognizes, however, that in some cases private property has been subdivided in a way that left an intervening strip of land between the upland boundary of a TVA floiuage easement and the waters of the reservoir, or did not convey to the adjoining landowner the land underlying the waters of the reservoir.
 
 In some of these situations, the owner of the intervening strip or underlying land cannot be identified or does not object to construction of water-use facilities by the adjacent landowner. In these situations, TVA may exercise its discretion to permit the facility, provided there is no objection from the fee owner of the intervening strip or underlying land.
 
 A TVA permit conveys no property interest. The applicant is responsible for locating the proposed facility on qualifying land and ensuring that there is no objection from any owner of such land.
 
 TVA may require the applicant to provide appropriate verification of ownership and lack of objection, but TVA is not responsible for resolving ownership questions. In case of a dispute, TVA may require private parties requesting TVA action to grant or revoke a TVA permit to obtain a court order declaring respective land rights.”
 

 18 C.F.R. § 1304.2(a) (2010) (emphasis added).
 

 In January 2007, the defendants submitted a joint application to the COE and the TVA for regulatory approval to construct a walkway and a pier that would, they said, extend from their properties out into Wilson Lake. The diagram of the proposed walkway indicated that the defendants intended to construct it so as to extend from a point just to the north of the boundary between the lot owned by Richardson and the lot owned by the plaintiffs to a point 20 feet west of the 509.34 contour line marking the upper limit of the federal flood easement, where the walkway would proceed south to front the plaintiffs’ lot for a distance of almost 75 feet before the walkway reached a 50-foot pier that was to be constructed at the edge of Wilson Lake. The COE and the TVA approved the proposal in March 2007; however, there is no indication that the plaintiffs or any members of the Cunningham family were notified of the permit application. Further, the COE permit issued to the defendants expressly stated that it did not “obviate the need to obtain other ... authorization required by law,” and the permit issued by the TVA to the defendants expressly indi
 
 *1266
 
 cated that it did “not give any property rights in real estate” and was issued “subject to any existing rights of third parties.” The defendants then constructed the walkway and pier across the front of Lot 2 according to the plans set forth in their permit application, notwithstanding the contemporaneous objections of the plaintiffs, and have refused to remove it despite requests from Marie Cunningham and the plaintiffs. It is undisputed that the pier and walkway largely lie within lands subject to the flood easement granted to the United States by members of the Cunningham family in 1920.
 

 The plaintiffs in their brief on appeal contend that they established the existence of a genuine issue of material fact concerning whether the defendants had the legal right to construct a walkway on land located below the 509.34 contour line. The defendants respond by contending that the plaintiffs did not adequately support their claim to fee ownership of property below the 509.34 contour line so as to give the plaintiffs standing to seek removal of the walkway and pier; the defendants assail the evidentiary materials submitted by the plaintiffs as amounting to merely concluso-ry assertions of ownership.
 

 We disagree with the defendants’ position. The plaintiffs’ evidence tends to indicate, in the aggregate, that members of the Cunningham family conveyed a permanent flood easement to the United States in 1920 as to their holdings below the 509.34 contour line
 
 (see supra
 
 note 3) in the east half of the east half of Section 2, Township 3 South, Range 9 West in Laud-erdale County, but that they did not simultaneously relinquish all of their residual rights as to the land subject to that easement. Although the grantors of the flood easement or their successors in title appear to have separately conveyed the lands
 
 above
 
 the 509.34 contour line, either in bulk or piecemeal, in connection with the development of the Locust Dell subdivision, there is no indication in the record that the purchasers of the platted lots in that subdivision were deeded any land lying
 
 below
 
 the 509.34 contour line (indeed, the Chamberlains’ deed expressly refers to the 509.34 contour line as being a property boundary). The plaintiffs’ summary-judgment materials intricately detail the progression of all residual property rights held by the grantors of the 1920 easement from those grantors to Marie Cunningham, and thereafter to the plaintiffs themselves. In contrast, the defendants made no prima facie showing that they held
 
 any
 
 fee or leasehold interest in the lands upon which they constructed the walkway and pier.
 

 We have no quarrel with the defendants’ assertion that the TVA, as successor in right to the United States, exercises authority to regulate and control all construction activity and structures below the 509.34 contour line. The 1920 instrument conveying the flood easement at issue in this case expressly conferred upon the United States the power to remove from land below the 509.34 contour line “any obstructions ... and any other thing which in any way interferes with or tends to render inaccessible, unsafe or unsanitary, any part of the slackwater pool created by [Wilson] Dam or the margin thereof.” However, that instrument also provided that the grantors “reserv[ed] the right ... to use said lands so far as may be done without interfering with the easement and rights ... conveyed” to the United States, a power that is consistent with the rights customarily retained by a servient tenement in an easement context.
 
 See generally Restatement (Third) of Property■
 
 — Servitudes § 4.9 comment c. (2000) (“The person who holds the land burdened by a servitude is entitled to make all uses of the land that are not
 
 *1267
 
 prohibited by the servitude and that do not interfere unreasonably with the uses authorized by the easement or profit.”);
 
 accord Blalock v. Conzelman,
 
 751 So.2d 2, 5-6 (Ala.1999) (servient tenant may use land subject to an easement so long as use does not conflict with purpose and character of easement). There is no record evidence indicating (a) that that residual right to enjoy the lands subject to the federal flood easement is held by the defendants, (b) that the apparent desire of the plaintiffs to “use” the land below the 509.84 contour line to secure a better view from Lot 2 conflicts with the federal flood easement, or (c) that the regulatory conduct of the COE or the TVA pursuant to the dominant rights expressly conferred in the easement has by necessity extinguished residual ownership rights.
 

 At bottom, the defendants’ argument appears to be premised on nothing more than a vague notion of federal supremacy as to approval of structures on lands adjacent to navigable waters. However, both the TVA permit obtained by the defendants and the regulatory provisions governing TVA permitting underscore that the TVA permitting process does not, and should not be held to, foreclose the assertion of private property rights of interested third parties as far as proposed construction along navigable waters is concerned. Indeed, as a matter of Alabama law, one holding an easement cannot enlarge the scope of that easement to accomplish other purposes
 
 (see Chatham v. Blount County,
 
 789 So.2d 235, 241 (Ala.2001)); thus, notwithstanding the opinion expressed by the TVA’s program manager, a dominant tenant such as the TVA would not be empowered to enlarge its easement authorizing
 
 removal
 
 of structures interfering with navigation below the 509.34 contour line so as to vest within the TVA the sole power to allow
 
 construction
 
 of a structure below that line by a permi-tee.
 

 For the reasons we have stated herein, we conclude that the trial court erred in entering a summary judgment in favor of the defendants. Material questions of fact persist concerning the precise extent of the defendants’ rights to construct the pier and walkway upon land below the 509.34 contour line that, for all that appears in the record as to the status of the record title thereto, is not the defendants’ to encroach upon. We pretermit, as unnecessary to our decision, consideration of any property rights that may have inured to the plaintiffs’ benefit via the doctrine of accretion.
 
 [4]
 
 Further, we decline the plaintiffs’ invitation to direct the immediate entry of a judgment in their favor given the silence of the record concerning the precise boundaries of the lots, as depicted in the plat or plats for the Locust Dell subdivision and its additions, and concerning whether the grantors in the defendants’ chain of title intended to convey or to reserve their rights in any lands below the 509.34 contour line. We remand the cause for further proceedings.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . We note that an appendix to the appellants’ brief contains documents, which do not appear in the record, that purport to be pleadings in the case. Those documents have not been considered in deciding this appeal. It appears that we must again reiterate that this court
 
 does not
 
 consider "appendices” to briefs that do not contain either material that also appears in the appellate record
 
 {see Slepian
 
 v.
 
 Slepian,
 
 355 So.2d 714, 716 (Ala.Civ.App.1977)) or statutory or regulatory material as to which Rule 28(h), Ala. R.App. P., applies. Rule 10(f), Ala. R.App. P., sets forth the proper mechanism for supplementing a record in a civil action, and that rule should be followed if one seeks to have this court consider matter that has been omitted from the record.
 

 [2]
 

 . Although, as we have noted, the Chamberlains' insurance carrier was permitted to intervene to protect its interests as to questions of insurance coverage that might arise in the event of a judgment in favor of the plaintiffs, that condition was negated by the entry of the summary judgment in favor of the defendants; thus, we deem that summary judgment to be final under Ala.Code 1975, § 12-22-2, so as to support appellate review.
 

 [3]
 

 . The parties do not dispute that the 505-foot contour line identified in the 1895 survey is the same as the current 509.34 contour line; the parties agree that the actual elevation figure has been corrected since 1920.
 

 [4]
 

 . We note, however, that the plaintiffs did not contend in this court that that doctrine applied until their reply brief was filed; similarly, the plaintiffs asserted no error with respect to the denial of their motion to strike except in their reply brief. We further note that an argument may not properly be raised for the first time in an appellant's reply brief.
 
 See, e.g., Steele v. Rosenfeld, L.L.C.,
 
 936 So.2d 488, 493 (Ala.2005).