THOMPSON, Presiding Judge.
This is the second time these parties have been before this court. In the previous opinion, this court explained the procedural history of the litigation as follows:
“Paul Murphy 'Brantley appealed] from the judgment of the Shelby Circuit Court in favor of Prudential Relocation, Inc. (‘Prudential’), for whom Gerald P. Scrushy and Kimberly B. Scrushy [were] substituted on appeal.[1] Brantley also appealed] from a separate judgment of the trial court entered in favor of Carl 0. Meeks and Patricia Meeks in the same litigation. This court consolidated the appeals, and, for the reasons set forth herein, we dismiss them.
“Generally, when resolving an appeal involving multiple parcels of real property, it is somewhat difficult to describe the relative locations of the various parcels of property at issue. For purposes of these appeals, we will simplify the present matter by stating that the ap *569 peals involve two parcels of property, an easement, and a road. Parcel A lies to the north of parcel B. Parcel B is bordered on the south by a county highway. A 60-foot easement connects Parcel A to the highway. The easement runs the length of parcel B along its western boundary.
“Brantley’s predecessors in interest owned parcel A and parcel B. Those predecessors conveyed parcel B to Guy Burns, Sr., and Guy Burns, Jr., reserving to themselves a 20-foot easement across parcel B to access the highway. The location of the easement was not defined.
“In February 1982, the Burnses conveyed parcel B to J.C. White and Carol White, subject to the undefined easement. In 1983, the Whites conveyed to Brantley’s predecessors the presently existing 60-foot easement. The deed conveying the easement reads, in part: ‘Grantors grant herein an easement across [parcel B] only for the purpose of gaining access to grantee’s property [ (parcel A) ]. Grantees herein agree to abandon any other means of access to said property heretofore reserved across [parcel B].’
“In 1984, Paul Brantley and one of his family members, Billy Brantley, purchased parcel A. In 1998, they subdivided it into multiple lots. At some point, Brantley built a 10-foot-wide asphalt driveway through the easement from parcel A to the county highway.
“In January 2006, the Whites conveyed parcel B to Maverick Enterprises, LLC (‘Maverick’). In April 2006, Maverick conveyed a portion of parcel B to Ronald Walker and Katherine Walker. Thereafter, Maverick began constructing a house for the Walkers on their lot. Maverick subdivided the portion of parcel B that it continued to own. In May
2006, Maverick sold two of the newly divided portions of parcel B to Carl Dewayne Meeks and Sandra Meeks and two other newly divided portions of parcel B to Carl O. Meeks and Patricia Meeks.
“On January 22, 2007, the Walkers filed an action against Brantley. They alleged that in November 2006 Brantley entered their property and cut down three large trees located on the easement, despite the fact that the trees did not impair his access to his property.
“Brantley filed an answer and a counterclaim. In the counterclaim, Brantley added Maverick and Kenneth Carter, Maverick’s managing member, as counterclaim defendants. Brantley alleged that, in retaliation for Brantley’s cutting down the three trees located in the easement, Carter shot several holes in Brantley’s water line, destroying it. On March 30, 2007, the Walkers filed a motion to dismiss Brantley’s counterclaim, arguing that Brantley’s counterclaim did not seek relief against them.
“On June 21, 2007, Brantley filed an amendment to his answer and his counterclaim. In it, he alleged that Carter had begun subdividing parcel B. Brant-ley asserted that he and his attorney had notified Carter of his objection to Carter’s planned use of the driveway on the easement and to Carter’s advertising to others a right to use that driveway. Brantley alleged that he had been harassed and intimidated by the Walkers, Carter, and Maverick and that they had damaged and destroyed portions of the driveway Brantley had constructed.
“On June 26, 2007, the parties filed a stipulation of dismissal with prejudice as to all the claims between the Walkers and Brantley, and they requested that the remaining parties be realigned to show Brantley as the plaintiff and Car *570 ter and Maverick as defendants. On August 5, 2007, the trial court entered an order dismissing with prejudice the claims between the Walkers and Brant-ley and realigning the remaining parties as they had requested.
“On November 13, 2007, the Walkers sold their property to Prudential.
“On August 27, 2009, Brantley filed an amended complaint in which he added Carl O. Meeks, Patricia Meeks, and Prudential as defendants. He alleged that the driveway he had constructed through the easement was a ‘private road,’ that he had maintained the easement for more than 20 years, that he had posted ‘no trespassing’ signs on the road on the easement, and that he had placed a locked gate across the road on the easement. He asserted that he had a ‘prescriptive right’ to the easement and the road across it. Brantley alleged that the Meekses were trying to sell their property and that they had been advising others that the road on the easement was available to access their property. Brantley alleged that Carl O. Meeks had removed and damaged Brantley’s signs indicating that the road in the easement was private. Brantley asserted the allegations in his previous amended counterclaim regarding Carter and Maverick. He alleged that Carter, Maverick, and Carl O. Meeks had harassed and intimidated him and that they had damaged and destroyed portions of the road on the easement. He sought a declaration that the road on the easement was a ‘private road’ and that the 60-foot easement was ‘an exclusive easement of Plaintiff Paul Brantley for the Brantley Family Subdivision.’ He also sought an award of damages against Carter, Maverick, and the Meekses.
“On September 28, 2009, Carl O. Meeks filed a separate action against Brantley. That action was assigned case number CV-09-900726. In his complaint, Meeks sought a declaratory judgment defining the easement as permissive in nature, defining it as solely for ingress and egress, prohibiting Brantley from asserting exclusive control over the easement, and ordering Brantley to cease and desist from harassing Meeks and others who used the easement and to remove all of the signage Brantley had placed on the easement. Meeks also sought an order from the court enjoining Brantley from harassing him and others using the easement, from placing signs on the easement without Meeks’s written permission, and from exercising any control over the easement beyond the mere use of the easement for ingress and egress.
“On October 13, 2009, Brantley filed a motion to dismiss Meeks’s action on the basis that Brantley’s action had been pending before Meeks’s action was initiated and should therefore cause Meeks’s action to abate. Alternatively, he argued that Meeks’s action should be consolidated with his action. Meeks filed a response in which he indicated that, at the time he filed his action, he was unaware that Brantley had added him as a party in Brantley’s amended complaint. He agreed that his action should be consolidated with Brantley’s action. Subsequently, the trial court consolidated Brantley’s action with Meeks’s action and indicated that Brantley’s motion to dismiss Meeks’s action was moot.
“On October 22, 2009, Prudential filed a motion to dismiss pursuant to Rule 12(b)(6), Ala. R. Civ. P., and a supporting brief. Prudential argued that the amended complaint made no claims against Prudential and that it did not demand a judgment against Prudential. Prudential also argued that Brantley could not state facts sufficient to convert *571 his ‘express, permissive easement from 1983’ into an ‘exclusive easement by prescription.’ Finally, Prudential asserted that Brantley’s claims against it were barred by the doctrine of res judicata based on the dismissal with prejudice of Brantley’s claims against the Walkers, Prudential’s predecessors in interest. To its supporting brief, Prudential attached deeds in its chain of title. “Brantley filed a response to Prudential’s motion to dismiss in which he appeared to argue that the easement was private and reserved for his exclusive use and that the owners of the subservient properties were not entitled to use the easement and the road that ran through the easement. Brantley argued that his claims against Prudential were not barred by the doctrine of res judica-ta because the dismissal as to the Walkers related only to their claim that Brantley had cut down some trees in the easement, because there had not been a final judgment in the matter, and because there was no identity of the parties. In support of his response to the motion to dismiss, Brantley attached an affidavit, executed by Billy Brantley, David Eiland, and himself. In part, that affidavit read:
“ ‘Our names are Paul Brantley, Billy Brantley, and David Eiland. Paul Brantley and Billy Brantley are the owners of the Brantley Family Subdivision and have been since 1984. The property was purchased at that time from Paul Brantley, Ralph E. Coleman, and J. Sherrill Hancock. The property consisted of 41.7 acres. We had our homes built and located on the family subdivision and have lived there from 1985 forward and have been in possession of the property since that time. David Eiland purchased lot 3 which is 5.43 acres in 1998 and had lived on the property and been in possession of the same since that time. In order to access the property, we built a 60 foot right of way with a personal 10 foot asphalt drive way along with a 3 inch water line for utility purposes and power lines for personal use. The county required the 60 foot right of way to establish the Family Subdivision in 1998....
[[Image here]]
“ ‘.... The County accepted the subdivision with the private drive being privately maintained and the County to have no responsibility for its maintenance and upkeep.
“ ‘Since that time and prior thereto, access has been by private road and maintained by the affiants. The private 60 foot right of way has a ten foot asphalt drive which was built and paid for by affiant, Paul Brantley, and had been taken care [of] by the affiants and their families.
“ ‘The property has been posted at all times as a private road and access has been controlled at various times by a cabled entrance and video surveillance. Our mailboxes are located on County Road 22 and our garbage collection is at County Road 22. We have no public traffic and have had none for these 22 years of our sole ownership. Affiant Paul Brantley is familiar with the previous usage of said road and prior to this time the road has been private as his family has owned the property since the 1930s. The right of way and private road was designated 60 feet to the west side. of the property in the 1980s.’
“Brantley also attached to the response several pictures of the road on the easement and deeds indicating how the prop *572 erties at issue had been transferred over time.
“Prudential filed a reply in support of its motion to dismiss in which it argued, among other things, that, in deciding the motion to dismiss, ‘the Court can simply review the express easement, note its clarity and determine as a matter of law that the easement is not exclusive which will dispose of the matter.’ It argued that ‘[t]he easement is clear and unambiguous on its face and gives no one— including Brantley — an exclusive right of access.’
“On January 12, 2010, the Meekses filed a motion to dismiss or, in the alternative, for a summary judgment. They adopted Prudential’s arguments in support of its motion to dismiss as well as the material Prudential submitted in support of that motion. The Meekses argued that, based on the evidence Prudential and Brantley had submitted, Brantley did not have an exclusive easement over the servient property. “Brantley filed a response to the Meekses’ motion in which he adopted the response he had filed to Prudential’s motion. To his response, Brantley attached a copy of a subdivision plat that, when considered in conjunction with other evidence the parties had submitted, demonstrated that only Prudential and the Meekses owned portions of the original servient estate through which the easement ran and that Maverick no longer owned any portion of the original servient estate.
“On February 19, 2010, the trial court entered an order granting Prudential’s motion and dismissing Brantley’s action against it. The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Brantley filed an appeal to the supreme court of that order; that court transferred Brantley’s appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“On April 30, 2010, the trial court granted the Meekses’ motion and entered a summary judgment in their favor as to all Brantley’s claims against them. The trial court certified the summary judgment as final pursuant to Rule 54(b). The trial court indicated that Carl O. Meeks’s claims against Brantley, which the trial court referred to as a counterclaim, were stayed pending any appeal of the summary judgment. Brantley filed an appeal of the trial court’s judgment to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6). This court consolidated Brantley’s appeals.
[[Image here]]
“ xThe Scrushys are successors in interest to property that Prudential had owned that had formed the basis of Brantley’s claims against Prudential.”
Brantley v. Scrushy, 57 So.3d 787, 788-91 (Ala.Civ.App.2010). In that case, this court dismissed the two appeals from the two separate summary-judgment orders after concluding that the orders from which the appeals were taken were not sufficiently final to support the appeals. Brantley v. Scrushy, supra. Specifically, the court held that the Meekses’ counterclaims against Brantley, which were not addressed in the April 30, 2010, summary-judgment order, were too closely intertwined with the claims resolved in the two orders so as to make the purported Rule 54(b) certifications inappropriate.
After this court issued its certificate of judgment in Brantley v. Scrushy, supra, Brantley amended his complaint to add additional plaintiffs; those plaintiffs are owners of property originally owned by Brantley but subdivided by him. In that amended complaint, Brantley and the other plaintiffs (hereinafter together referred *573 to as “the Brantley plaintiffs”) sought a judgment declaring that the easement was private and applied only to the property owned by the Brantley plaintiffs. The Brantley plaintiffs alleged that the defendants who owned property near the easement had failed to create an easement on their own property, as they had agreed to do in obtaining permission from the county to subdivide their property. We note that the record indicates that the Scrushys were added as parties in the trial court as a result of allegations against them made in the trial court in the Brantley plaintiffs’ amended complaint.
The Meekses moved to renew their summary-judgment motion and moved to strike the Brantley plaintiffs’ amended complaint. The Brantley plaintiffs then filed a motion seeking to be allowed to amend Brantley’s complaint. Brantley later moved to compel the depositions of the Meekses, and the Meekses opposed that motion. The trial court denied the motion to compel.
On February 16, 2012, the trial court entered a summary judgment in favor of the Meekses on Brantley’s claims and noted that the Meekses’ claims against Brant-ley were dismissed without prejudice. The trial court also granted the Meekses’ motion to strike the Brantley plaintiffs’ eom-plaint and denied the Brantley plaintiffs’ motion to amend the complaint. The trial court then determined that there was no just reason for delay, and it certified the February 16, 2012, summary-judgment order as final pursuant to Rule 54(b), Ala. R. Civ. P. The Brantley plaintiffs timely appealed, and the appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
Initially, we note that in their brief on appeal the Brantley plaintiffs do not argue that the trial court erred in striking their amended complaint, which effectively denied all of them except Brantley the status of plaintiffs in the action. The arguments asserted in the appellants’ brief pertain only to issues relevant to Brantley, and, for that reason, in this opinion, we refer to the arguments on appeal as being asserted by Brantley.
As in Brantley v. Scrushy, supra, none of the parties has addressed the question whether the order entered by the trial court is sufficiently final to support this appeal. Brantley v. Scrushy, 57 So.3d at 791-92. The trial court did not alter its February 19, 2010, order, made final pursuant to Rule 54(b), in favor of Prudential on Brantley’s claims against that defendant.[1] The February 16, 2012, order, also *574 certified as final pursuant to Rule 54(b), disposed of all the claims remaining between the Meekses and Brantley. The claims the trial court resolved in its February 19, 2010, summary-judgment order and its February 16, 2012, summary-judgment order all pertain to the parties’ rights in the easement. The only claims that remained pending were those in which Brantley sought monetary damages from Carl 0. Meeks, Carter, and Maverick on his claims of harassment and damage to property. Accordingly, we conclude that those orders are sufficiently final to support this appeal.
On appeal, Brantley argues that the trial court erred in determining that he was not entitled to what he refers to as a “reserved easement.” See Republic Steel Corp. v. Payne, 272 Ala. 483, 487, 132 So.2d 581, 584 (1961) (“The rule seems to be well settled that an easement may be the subject of a reservation; and that a reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands”). The substance of Brantley’s argument on this issue is that the reservation of the easement in Brantley’s deed conveyed to him a “private” or exclusive right to use the easement and that that right precludes the rights of others, even the servient owners, to use the easement. The 1983 deed that conveyed the current 60-foot easement to Brantley’s predecessors-in-interest provided, in relevant part: “Grantors grant herein an easement across [parcel B] only for the purpose of gaining access to grantee’s property. Grantees herein agree to abandon any other means of access to said property heretofore reserved across [parcel B].” The deed contains no mention that the rights of the servient-estate owners were curtailed with regard to the easement.
On appeal, Brantley cites Arp v. Edmonds, 706 So.2d 736 (Ala.Civ.App.1997). In that case, the deed awarding property to the Arps’ predecessors-in-interest provided for a 25-foot easement across the property owned by the Edmondses. The Arps and others used a dirt road to access their property from 1971 until 1993, when the Edmondses “eradicated” the dirt road and constructed another road to access the Arps’ property; Mr. Edmonds explained that the new road increased the value of his property. The trial court found in favor of the Edmondses, but our supreme court reversed. In reaching its holding, our supreme court concluded that the Arps had demonstrated the creation of an easement by implication by presenting “substantial evidence of unity of ownership, that the dirt road was used openly and continuously since 1971, that the easement was necessary to reach the Arps’ property, and that the trial court misapplied the law to the facts.” Arp v. Edmonds, 706 So.2d at 739.
Bradley contends that he had used his easement as had the Arps in Arp v. Ed-monds, supra. However, it is unclear how that argument assists Brantley’s position on appeal. Arp v. Edmonds, supra, does not address the rights of the servient-estate owner in the easement by implication.
In its orders in favor of Prudential and the Meekses, the trial court relied upon Blalock v. Conzelman, 751 So.2d 2 (Ala. 1999). In that case, the Conzelmans had an easement over a portion of Blalock’s property, and all the parties used that easement as a driveway to access their respective homes. Blalock made plans to construct a circular driveway that would *575 connect to the easement. The Conzel-mans initiated an action to block that proposed construction, citing the damage to the trees and landscape near the easement that would occur. The trial court held that Blalock could not construct the proposed circular driveway, concluding that the Conzelmans had established that they had a right to exclusive use of the easement, either through their deed or through their prescriptive use of the easement. Our supreme court rejected both of those conclusions and reversed.
In Blalock v. Conzelman, supra, the relevant deed reserved to the Conzelmans’ predecessors-in-interest an easement “for ingress and egress to and from” the property owned by the Conzelmans. 751 So.2d at 3. Our supreme court concluded that that language did not create an exclusive easement in favor of the Conzelmans; it explained:
“The general rule in Alabama and elsewhere is ‘that the [fee] owner of a servient estate may himself use the land upon which an easement has been dedicated so long as such right does not conflict with the purpose and character of the easement.’ Duke v. Pine Crest Homes, Inc., 358 So.2d 148, 150 (Ala. 1978) (emphasis added); see Carter v. Stringfellow, 293 Ala. 525, 306 So.2d 273 (1975) (‘The right to use the land on which an easement has been dedicated remains in the owner of the servient estate so long as such right does not conflict with the purpose and character of the easement’); and Collins v. Alabama Power Co., 214 Ala. 643, 108 So. 868 (1926). Moreover, ‘[a] principle of concurrent, rather than exclusive, use underlies the law concerning easement.’ McMahon v. Hines, 298 Ill.App.3d 231, 239, 697 N.E.2d 1199, 1206, 232 Ill.Dec. 269, 276 (1998). ‘Therefore, use of an easement by both landowners must be permitted in accordance with their individual interests.’ Id. See also Fedorko Properties, Inc. v. C.F. Zum & Assocs., 720 A.2d 147 (Pa.Super.1998) (the mere use of the term ‘exclusive easement’ in an easement conveyance did not ‘grant an easement exclusive of the servient estate’). Nothing in the deeds conveying lots 1 and 2 suggests the Conzel-mans’ easement was granted or reserved exclusively for them.”
Blalock v. Conzelman, 751 So.2d at 5-6. In that case, the court also held that the Conzelmans had an easement for the purposes of accessing their property and that that easement did not extend to allow them to preserve the trees and landscape that did not affect their use of the easement.
The supreme court also rejected the Conzelmans’ argument that their having maintained the landscaping near the easement for a number of years converted the easement into a prescriptive easement in their favor. Blalock v. Conzelman, supra. The supreme court explained:
“ ‘[A] possession permissive in its inception cannot become adverse to the owner until a positive assertion of a right hostile to the owner is brought to him.’ Monaghan v. Wagner, 487 So.2d 815, 819 (Miss.1986), citing Williams v. Patterson, 198 Miss. 120, 21 So.2d 477 (1945); see also Taylor v. S.S. Kresge Co., 326 Mich. 580, 40 N.W.2d 636 (1950). ‘Ordinary acts of oumership, consistent with permissive possession, are not sufficient to constitute an adverse holding capable of ever ripening into a title.’ Harkins & Co. v. Lewis, 535 So.2d 104, 117 (Ala.1988) (emphasis added).”
Blalock v. Conzelman, 751 So.2d at 5.
The facts of this case are on point with those of Blalock v. Conzelman, supra. The deeds at issue in this case awarded *576 Brantley an easement to access his property. Under Blalock v. Conzelman, supra, the servient-estate owner also has the right to use the easement to the extent that that use does not conflict with the purpose of the easement. Blalock v. Conzelman, 751 So.2d at 6 (“[P]ursuant to the general rule, the parties have concurrent rights to the use of the easement, and neither party can prevent the other from using the easement in a manner consistent with the purposes for which the easement was created. Thus, the existence of the easement creates mutual rights and obligations.”). In this case, the easement is being used by the parties having an interest in the properties adjacent to the easement as a driveway to access their properties. Brantley has not alleged that the easement is being used in a manner inconsistent with its purpose; rather, he alleges only that there are more property owners using the easement as a driveway. The right to that additional use, however, was afforded to the Meekses and other owners of the property subdivided from parcel B, the servient estate. We conclude that the trial court correctly determined that Blalock v. Conzelman, supra, governs the facts of this case and, therefore, that it correctly entered a summary judgment on the claims attempting to establish the parties’ respective rights in the easement. Therefore, we conclude that the trial court properly determined that Brantley’s deed did not provide him or his successors-in-interest a right to exclusive use of the easement.
Brantley also argues on appeal that the trial court erred in entering a summary judgment on his claims seeking the imposition of a prescriptive easement. Brantley cites Belcher v. Belcher, 284 Ala. 254, 224 So.2d 613 (1969), in which our supreme court affirmed a judgment finding that, under the facts in that case, the plaintiffs had demonstrated a right to a prescriptive easement. In that case, the plaintiffs demonstrated that they and others had used a road across the defendants’ property for more than 20 years under a claim of right. The supreme court rejected the defendants’ argument that the use of the claimed easement was permissive, noting that the evidence indicated that the defendants knew about the use and did not object to it, which, it determined, did not necessarily demonstrate a permissive use. Citing the ore tenus rule, the court affirmed. Belcher v. Belcher, supra.
Also, Brantley relies on Apley v. Tagert, 584 So.2d 816 (Ala.1991), in which the Ap-leys purchased property upon which was a road used by the Tagerts to access their property. The Apleys sued to declare their rights in the easement and to prevent the Tagerts from using the easement. The evidence in that case indicated that the Tagerts had used the property for 80 years to gain access to their property. The supreme court held that the facts of that case warranted the imposition of a prescriptive easement in favor of the Ta-gerts because the Tagerts had used the roadway to access their property under a claim of right.
Both Belcher v. Belcher, supra, and Apley v. Tagert, supra, are distinguishable from the facts of this case. In both of those cases, the servient-estate owners were attempting to prevent the easement holder from using the easement. In this case, none of the servient-estate owners are seeking to prevent Brantley from using the easement to access his property. Rather, Brantley is seeking to establish a prescriptive right to his exclusive use of the easement to the exclusion of the ser-vient-estate owners. Belcher v. Belcher, supra, and Apley v. Tagert, supra, do not support his claim to prevent the servient-estate owners from using the easement. Assuming, however, that one could establish a prescriptive easement that would *577 preclude the rights of the servient-estate owner through the theory of a prescriptive easement, Brantley may not prevail on this argument under the facts of this case. Brantley’s right to use the easement began with permissive use, i.e., the grant of the easement. Such permissive use cannot be said to be adverse unless the servient-estate owner asserts in some manner that the easement holder lacked the right to use the easement. Blalock v. Conzelman, 751 So.2d at 5. Brantley argues that his posting of signs and constructing a paved driveway on the easement constituted evidence of his adverse use. However, those actions constitute “ ‘[ordinary acts of ownership, consistent with permissive possession,’ ” and did not cause Brantley’s claim to use the easement to become adverse to that of the servient estate. Blalock v. Conzelman, 751 So.2d at 5 (emphasis omitted). We cannot agree with Brantley that he has demonstrated that the trial court erred in determining that he had not presented sufficient evidence of his adverse use of the easement so as to warrant the imposition of an exclusive easement in his favor, i.e., a right to exclude the servient-estate owners from using the easement. Blalock v. Conzelman, supra.
Brantley also argues on appeal that the trial court erred in determining that his claim against Prudential was barred by the doctrine of res judicata.[2] Brantley originally asserted a claim against the Walkers in which he sought to determine the parties’ rights in the easement at issue in this matter, and the Walkers sought damages from Brantley for removing trees from the easement. Prudential is the Walkers’ successor-in-interest. The trial court entered an order that incorporated an agreement reached by Brantley and the Walkers and provided that their respective claims were dismissed with prejudice. Brantley argues on appeal that those claims were actually dismissed without prejudice, but the trial court’s order does not support that argument. Brantley later added Prudential, as the Walkers’ successor-in-interest, as a defendant in one of his amended complaints.
In entering its February 19, 2010, order in favor of Prudential, the trial court determined that Brantley had not asserted any claim against Prudential and, therefore, that it was appropriate to dismiss Prudential from the action. In addition, the trial court found that, even assuming that Brantley had asserted claims that were cognizable, those claims had been addressed and resolved as part of the order in favor of the Walkers, Prudential’s predecessors-in-interest. In his brief on appeal, Brantley argues only that the trial court erred in determining that his claims against Prudential were barred by the doctrine of res judicata. However, we conclude that the trial court is correct that Brantley failed to assert claims against Prudential that properly sought relief, and, for that reason, we need not reach the issue whether any purported claims Brant-ley might have asserted against Prudential could be barred by the doctrine of res judicata.
In its February 19, 2010, order, the trial court stated:
“The court first finds that Brantley makes no claim and demands no judgment against Prudential Relocation, Inc. The only mention of Prudential Relocation, Inc., in the Amended Complaint comes in the introductory paragraph in which Brantley merely describes Prudential Relocation, Inc.’s corporate status and identifies it as the sucessor in interest of property owned by the Walkers. Likewise, Brantley’s Second Amended Complaint alleges no claim against Prudential Relocation; to the ex *578 tent that this amendment seeks a declaration of the rights regarding this easement, the Court disposes of this claim herein. Since Brantley makes no allegations of any actions by Prudential Relocation, Inc., taken or not taken in derogation of any laws or agreements, the Complaint states no claim against Prudential Relocation, Inc., under Alabama Rule of Civil Procedure 12(b)(6).”
Our review of the record on appeal supports the trial court’s determination regarding the nature of Brantley’s claims against Prudential in his amended complaint in which he first asserted claims against Prudential. The existence of a “second” amended complaint in which Brantley asserted claims against Prudential is mentioned several times in the record on appeal; those references indicate that the “second amended complaint” was filed after the August 27, 2009, amended complaint. We note that in a brief in support of his jury demand, filed on August 7, 2009, Brantley refers to that document, or one filed contemporaneously, as a “second amending” complaint. This court’s clerk contacted the trial court’s clerk to obtain a document filed on or after August 7, 2009, that might be a “second amended complaint,” but the trial court’s clerk was unable to locate any such filing. It was the responsibility of Brantley, as the appellant, to ensure that the record contains sufficient evidence to warrant a reversal. J.B. v. Cleburne Cnty. Dep’t of Human Res., 992 So.2d 34, 40^41 (Ala.Civ. App.2008). Thus, Brantley has failed to demonstrate that the trial court erred in determining that he failed to assert a valid claim for relief against Prudential. Further, in his brief on appeal, Brantley has not identified the nature of any claims he might have asserted against Prudential. Given Brantley’s argument that his claims against Prudential are not barred by the order in favor of the Walkers, it appears that Brantley intended to assert claims against'Prudential seeking a determination of the rights of the parties in the easement. However, as already stated, this court has affirmed the trial court’s resolution of the parties’ rights in the easement. Thus, even assuming that Brantley had asserted cognizable claims against Prudential concerning whether Prudential had rights to use the easement, those claims have been resolved by this court’s affir-mance of the trial court’s determination that Brantley did not have an exclusive easement such that he could prevent the servient-estate owners from using the easement. Accordingly, we conclude that it is irrelevant whether Brantley’s claims against Prudential were barred by the doctrine of res judicata.
Brantley also states as an issue that the trial court erred in denying his motion to compel the depositions of the Meekses; he filed that motion to compel after this court had dismissed the original appeal in Brantley v. Scrushy, supra, and had remanded the cause back to the trial court. However, Brantley’s brief on appeal does not set forth an argument as to that issue, and he cites to no authority in support of his general statement that the trial court erred in denying the motion to compel. For that reason, we do not address that issue. Beacheroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004) (declining to address an argument not supported by authority and noting that it is not the function of an appellate court to perform an appellant’s legal research).
AFFIRMED.

. We note that under Rule 25(c), Ala. R. Civ. P., an action may be continued against a defendant who has transferred his, her, or its interest in the action if no motion to substitute parties is made, or if the trial court denies such a motion. See American Credit Co. of Alabama, Inc. v. Bradford, 414 So.2d 119, 121 (Ala.Civ.App. 1982) (‘"The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.' ” (quoting 7A Wright & Miller, Federal Practice and Procedure § 1958, at p. 664)). See also Ex parte Simmons, 791 So.2d 371, 382 (Ala.2000) (“Rule 25(c) clearly allows Simmons, upon remand, to continue her action against [the original defendant] or move the trial court to substitute or join [possible assignees of the original defendant].”). Thus, although the trial court did not formally substitute the Scrushys for Prudential, the order pertaining to Prudential disposes of any claim against the Scrushys that Brantley might maintain with regard to the original claims against Prudential. For the purposes of resolving this appeal, and in line with Brantley v. Scrushy, *574 we again refer to Prudential or the Scrushys as "Prudential.”

. See supra note 1.